**The relief described hereinbelow is SO ORDERED.**

**Signed November 06, 2020.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| PTSI CONSTRUCTION, INC.[1] | § | CASE NO. 20-30522-hcm |
| a/k/a PowerTek Systems | § | (Chapter 11; Subchapter V) |
| Debtor. | § | |

### ORDER CONFIRMING
### SUBCHAPTER V PLAN OF REORGANIZATION (CRAMDOWN UNDER § 1191(b))

On November 3, 2020, the Court conducted a hearing on confirmation of the First Amended Small Business Debtor's Plan As Modified Prior to Confirmation Under 11 U.S.C. § 1193(a) dated October 23, 2020 (dkt# 56) ("Plan")[2] filed by PTSI Construction, Inc. ("Debtor"). Appearing at the confirmation hearing were James Chichetti on behalf of the Debtor; E. P. Bud Kirk, as counsel for the Debtor; Brad W. Odell, as Subchapter V trustee in the Debtor's case ("Trustee"); Jim Rose, as attorney for the U.S. Trustee; Mr. Don Stecker, as counsel for the City of El Paso; and Courtney J. Hull of the Office of the Texas Attorney General, as counsel for the Comptroller of Public Accounts of the State of Texas.

_____

[1] The Debtor's mailing address is 7349 N. Loop, El Paso, TX 79915. The last four digits of the Debtor's EIN number are xx-xxxx4024.

[2] All capitalized terms used but not defined in this Confirmation Order shall have the meanings ascribed to such terms as set forth in the Plan.

1

The Court has considered the Plan, the evidence, the certificates of mailing and service of the Plan and related materials, the ballot summary filed by the Debtor, the agreements, statements, and arguments of counsel and the parties, the file and record in this bankruptcy case, and hereby **FINDS AS FOLLOWS**:

A.      The Court has jurisdiction over this bankruptcy case, the Debtor, and the subject matter of the confirmation hearing under 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a "core proceeding" under 28 U.S.C. § 157(b)(2) and the Court has jurisdiction and authority to enter this Confirmation Order.

B.      The Debtor is a small business debtor and has properly elected treatment under Subchapter V of the Bankruptcy Code.

C.      Reasonable, adequate, and sufficient notice of the hearing on confirmation of the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, has been provided to all creditors, parties in interest, and other parties entitled to notice and has complied with the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the Bankruptcy Code.

D.      The pre-confirmation modifications to the Plan by the Debtor comply with all applicable requirements of 11 U.S.C. § 1193(a) and Bankruptcy Rule 3019. The modifications do not adversely change the treatment of any creditor or interest holder that has not agreed to the modifications.

E.      The contents of the Plan (with the Additional Plan Provisions set forth below) satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the Bankruptcy Code.

F.      The Plan (with the Additional Plan Provisions set forth below) and the Debtor have satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1129(a), except for 11 U.S.C. §§ 1129(a)(8), 1129(a)(10), and 1129(a)(15). However, the Plan can and should be confirmed under 11 U.S.C. § 1191(b), as the Plan (with the Additional Plan Provisions set forth below) does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims and interests that have not accepted the Plan.

G.      The Plan (with the Additional Plan Provisions set forth below) and the Debtor have satisfied any and all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

    **THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS**:

1.      The First Amended Small Business Debtor's Plan As Modified Prior to Confirmation Under 11 U.S.C. § 1193(a) dated October 23, 2020 (dkt# 56) ("Plan") filed by the Debtor, together with the Additional Plan Provisions set forth below, is hereby

CONFIRMED under **11 U.S.C. § 1191(b)(cramdown)**.  A copy of the Plan is attached hereto as Exhibit A.  That copy of the Plan has an updated payments calendar, to match the terms of this Order.

2.      To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby denied.

3.      The service of the Trustee shall continue after confirmation of the Plan. The Trustee shall make payments to creditors under the Plan in accordance with 11 U.S.C. § 1194(b), except for the Small Business Administration ("SBA"). The unimpaired claim of the SBA under the Plan will be paid directly by the Debtor. The Debtor is hereby authorized and directed to provide adequate funds to the Trustee to enable the Trustee to timely make payments to creditors and claimants as required by the Plan (including the Trustee's commission), and to implement the Plan in all respects. The Trustee shall be entitled to a commission of 5% of the amount of all Trustee-made payments to creditors and claimants under the Plan, and the Court finds such commission to be reasonable. The Trustee may apply to the Court for additional compensation for post-confirmation services beyond the 5% commission on Plan payments, if it becomes necessary for the Trustee to file pleadings other than requests for compensation.

4.      The Debtor will be entitled to a discharge only as provided by 11 U.S.C. § 1192 and paragraph 8. F, below.

5.      Property of the bankruptcy estate shall include all property acquired by the Debtor and all earnings from services performed by the Debtor after commencement of this bankruptcy case and before this bankruptcy case is closed, dismissed, or converted as provided by 11 U.S.C. § 1186(a), in addition to the property of the Debtor as of commencement of the bankruptcy case under 11 U.S.C. § 541.

6.      The terms of the Plan (with Additional Plan Provisions set forth below) will be binding upon the Debtor, all creditors, and equity security holders, whether or not such creditors and equity holders are impaired under the Plan or have accepted the Plan, as provided by 11 U.S.C. § 1141(a).

7.      Within 3 days after the Effective Date of the Plan, counsel for the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. Counsel for the Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

8.      Additional Plan Provisions. The following provisions shall apply and be added to the Plan (herein "Additional Plan Provisions"), notwithstanding anything to the contrary in the Plan or other provision of this Confirmation Order:

A.  All or such portion of the future earnings and other future income of the Debtor shall be submitted to the supervision and control of the Trustee as is necessary for the execution of the Plan, as provided for under 11 U.S.C. § 1190(2).

B.  The secured claim of the City of El Paso Tax Collector ("City") in Class 1 of the Plan will receive interest at the rate of 12% per annum from the petition date (April 17, 2020) until paid in full. The Plan payments to the City in Class 1 shall be $383.82 per month, in 36 monthly installments that are to be paid over as many as 48 months as set forth in Article IV of the Plan. In the event the payments extend beyond 36 months, the Trustee shall adjust the payment of the secured claim of the City to account for the accrual of statutory interest on the extended payoff period.

C. The priority tax claim of the City under the Plan will be paid in the amount of $9,073.37, together with interest at the rate of 12% per annum from the petition date (April 17, 2020) until paid in full. The Plan payments to the City for its priority tax claim shall be $325.47 per month, in 36 monthly installments commencing on the 10th day of the month following the Plan Effective Date.  The Debtor shall have 48 months to make such 36 payments as set forth in Article IV of the Plan. In the event the payments extend beyond 36 months, the Trustee shall adjust the payment of the priority claim of the City to account for the accrual of statutory interest on the extended payoff period.

D. The Trustee's pre-confirmation fees and expenses approved by the Court, shall be paid under the Plan in 12 monthly installments.

E. Any timely filed and allowed claims for rejection of any unexpired leases or executory contracts shall be paid as a Class 3 general unsecured creditor under the Plan, and shall be paid the same pro rata amount as other allowed unsecured claims in Class 3.

F. The period of time following which the Debtor may request a discharge of debts paid under the Plan shall be 3 years after the first Plan payment is due, to the extent permitted under 11 U.S.C. § 1192.

G.  The Debtor shall make payments under the Plan in the total amount of at least $162,376.24 during the 3-year period beginning with the date the first Plan payment is due until the end of such 3-year period, which total amount constitutes the projected disposable income of the Debtor for such 3-year period under 11 U.S.C § 1191(c)(1)(A).

9.      This Confirmation Order is a final order and the time period in which any appeal must be filed shall commence immediately upon the entry hereof.

# # #

**APPROVED:**

E.P. BUD KIRK
State Bar No.  11508650
600 Sunland Park Drive
Bldg. Four, Suite 400
El Paso, TX  79912
(915) 584-3773
(915) 581-3452 facsimile
budkirk@aol.com

Attorney for the Debtor

BRAD W. ODELL
/s/ with email permission
**Brad W. Odell**
**Mullin Hoard & Brown, LLP**
1500 Broadway, Suite 700
Lubbock, Texas 79401
**806.765.7491**
**806.765.0553 – Fax**
bodell@mhba.com

Subchapter V Trustee

DON STECKER
/s/ with email permission
**Don Stecker**
Partner
**Linebarger Goggan Blair & Sampson, LLP**
**Attorneys at Law**
don.stecker@lgbs.com
Main: (210) 225-6763
Direct: (210) 368-5222
Fax: (210) 225-6410

Counsel for the City of El Paso

COURTNEY J. HULL
/s/ with email permission
**Courtney J. Hull**
Assistant Attorney General
Bankruptcy and Collections Division
Texas Attorney General's Office
300 W. 15th Street
Austin, Texas 78701
Direct: (512) 475-4862
Fax: (512) 936-1409
courtney.hull@oag.texas.gov

Office of Texas Attorney General for
Comptroller

# EXHIBIT "A"

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 7 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 1 of
114

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

In re                 §

                    §

PTSI CONSTRUCTION, INC.,    §     Case No. 20-30522-HCM-11

                    §

        Debtor.      §

## FIRST AMENDED SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION, AS MODIFIED PRIOR TO CONFIRMATION UNDER 11 U.S.C. § 1193(a)

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

Now comes PTSI CONSTRUCTION, INC. the Debtor in these proceedings under Subchapter V of Chapter 11, Title 11, United States Code, and through its attorney E.P. BUD KIRK files this First Amended Small Business Plan of Reorganization, as Modified Prior to Confirmation Under 11 U.S.C. § 1193(a), and would show:

This Plan of Reorganization is being modified to accommodate agreements negotiated with the TEXAS ATTORNEY GENERAL (hereinafter "the ATTORNEY GENERAL") for the treatment of the ATTORNEY GENERAL's priority claims in Plan Article VIII and its general unsecured claim in Plan Class 3; and with THE CITY OF EL PASO TAX COLLECTOR upon its priority claims and its claim in Plan Class 3. With those agreements, it appears the ATTORNEY GENERAL and CITY OF EL PASO will accept the Plan. The Plan discussion concerning cramdown at Plan pages 13, 14, and 19, and Plan Article XX on Discharge at page 32 have also been revised, so that they more accurately depict the provisions of new Subchapter V on those subjects.

## Table of Contents

I.     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    A Brief History of the Business Operations of the Debtor . . . . . . . . . . . . . . . . . . . . . . 4

III.   A Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 8 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 2 of
120
114

IV.    Projections by the Debtor of its Ability to Make Payments under this
       Plan of Reorganization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.     Debts to be Dealt with by the Plan, and the Distribution Function in this Case. . . . . 10

VI.    Voting on the Plan, Objecting to the Plan, and the Confirmation Process . . . . . . . . 11

VII.   Allowance and Disallowance of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VIII.  Treatment of Administrative Expense Claims, U.S. Trustee's Fees, and
       Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IX.    Classified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

X.     Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XI.    General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XII.   General Provisions: Claims Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XIII.  General Provisions: Effect of Confirmation; Vesting of Assets . . . . . . . . . . . . . . . 24

XIV.   General Provisions: Treatment of Secured Claims, Attorney's Fees
       Upon Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XV.    General Provisions: Powers Retained by the Debtor . . . . . . . . . . . . . . . . . . . . . . . . 26

XVI.   General Provisions: Duration of the Plan; Liquidation Test;
       Subsequent Modifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XVII.  General Provisions: Timing of Payments, Pre-Payments . . . . . . . . . . . . . . . . . . . . . 27

XVIII. Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XIX.   Effect of this Plan on Terms and Conditions of Secured Creditors'
       Loan Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XX.    Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 9 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 3 of
114

## Exhibits

EXHIBIT "1"    Definitions

EXHIBIT "2"    Schedules

EXHIBIT "3"    Appraisal of Equipment

EXHIBIT "4"    Monthly Operating Reports

EXHIBIT "5"    Agreed Order Regarding Debtors Partial Objection to Claim #1 of City of El Paso

EXHIBIT "6"    Annual Profit and Loss statements, 2016-2019.

EXHIBIT "7"    Calendar of Ideal Plan payments (assumes no construction "lulls")

EXHIBIT "8"    Claims of the Members of the Administrative Convenience Class

EXHIBIT "9"    U.S.C. § 1141

EXHIBIT "10"   U.S.C. § 1191

EXHIBIT "11"   U.S.C. § 1129

## I. INTRODUCTION

The Debtor filed for Chapter 11 protection on April 17, 2020, in the United States Bankruptcy Court for the Western District of Texas, El Paso Division ("the Court"). The Court's jurisdiction over this case arises under 28 U.S.C. § 1334(a) and (b). If you have received this Plan of Reorganization (hereinafter "the Plan"), that is because you are believed to hold a claim against the Debtor, for which a treatment in payment is proposed in the Plan. You have a right to vote upon the Plan, which is explained below at Article VI of this Plan. If the Plan is accepted by the required number of creditors and approved by the Court, you should receive payments, according to the Plan upon your allowed claim in these proceedings. In reading this Plan you should be aware that there are Definitions in it that may be different from everyday usage of these terms. The Definitions are gathered alphabetically in Plan Exhibit "1." You are also encouraged to consult your own attorney for advice about the acceptance or rejection of this

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 10 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 4 of
114
120

Plan.

## II. A BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

PTSI CONSTRUCTION, INC. (hereinafter "PTSI") is a general contractor concentrating upon commercial remodeling work and small-scale new commercial construction; occasionally PTSI has taken on residential construction jobs as well. PTSI has been in business since 1999 but was not incorporated until December 31, 2004. It is a Subchapter "S" corporation, meaning it is a "pass-through" entity which does not file its own annual tax returns. Instead the owner(s) of a Subchapter "S" corporation include the business income and the business expenses and business deductions of the corporation (including depreciation) on their personal tax returns.

PTSI has a single shareholder, Mr. JAMES CICCHETTI. He has always been the owner of the business; he used to own the few assets it had then, prior to incorporating, and since then he has owned the stock. The business typically has construction projects within four states: Texas, New Mexico, Colorado, and Arizona. Mr. CICCHETTI does not have a degree as an architect or an engineer, so the corporation relies on third-party professionals for those services.

PTSI does not have a large staff of employees, either; it uses a separate staffing company. Locally that is usually T&T STAFFING CO. Such staffing companies are common in the light construction industry; there are sufficient numbers of skilled and technically literate workers, available to the staffing company, to read plans and follow architects' directions, to get jobs done competently and in a workmanlike manner. For a small company like PTSI, which goes from one short-term job to another, not knowing long in advance how many workers it needs to hire, a staffing company makes fiscal sense. A staffing company reduces the need to hire and lay-off people so frequently that employment-related taxes, unemployment benefits and governmental compliance and worker compensation insurance are not as expensive.

PTSI has had a spotty financial performance. There have been some good years. Sometimes it has not had enough work. Sometimes the contracts were too costly. Sometimes

4

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 11 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 5 of
114

Mr. CICCHETTI was off on his bids. The profit-and-loss statements annually since 2016 show erratic highs and lows. Please refer to Article IV of this Plan, below.

PTSI encountered serious financial trouble over Texas sales tax collection during the years 2017-2018. The Texas Comptroller conducted an audit for that period and determined that PTSI should have collected $134,000 more in sales tax than it did from its customers, and that PTSI should have remitted $33,000 more in collected sales tax, than it did. PTSI appealed the audit determinations, based on its ability to repay.

PTSI had the choice of appealing over the auditor's findings. The rules for sales taxable transactions applicable to Texas construction companies, are not simple. The audit methodology in the Texas Tax Code is designed to be efficient for the State, and cumbersome for the taxpayer. The auditor, often a private practitioner hired by the state, samples a short period of the tax-payer's entire financial records, including invoices, receipts, bank deposits, bank statements, accounts receiveable, federal tax returns, cash flow reports, etc. The auditor presumes that all funds coming into the taxpayer arose from taxable sales, and the taxpayer has to prove, with documentation, either that the sales transactions were non-taxable or that the funds or deposits did not come from sales. The presumptions in the audit method take a heavy toll on businesspersons who are not closely advised as to taxable transactions and/or who don't take the time and trouble to make and maintain meticulous, well-organized records. As for collected tax that is not remitted, the Texas Tax Code treats that tax as the State's money, and any person who handles it and does not remit it to the Comptroller violates a fiduciary duty. A harried construction contractor who has more immediately-pressing obligations to pay for, however, such as payroll, rent, utilities, or materials being delivered, may in a pinch take advantage of the deferred due date for depositing the sales tax.

In the appeal, PTSI was found by the Administrative Law Judge to be insolvent, when its assets were shown to be worth less, on a fair-market-value basis, than what PTSI owed in debts. The ALJ recommended PTSI be given an insolvency program, to pay what it could afford. The

5

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 12 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 6 of
114

Comptroller at that time, however, could not forgive tax debt, under the provisions of the Texas Administrative Code. That law has since been amended.

Following the conclusion of the appeal, the Comptroller sent notices to freeze PTSI's bank account. On April 2, 2020, the bank account contained $22,000. The Comptroller "levied" on the money on April 15, 2020, before PTSI could get Chapter 11 protection (the automatic stay) in place, on April 17, 2020.

Prior to filing this case PTSI applied for and was granted, an SBA "Economic Injury Disaster Loan." Such loans are repayable over 30 years at 3.75% interest per annum, and the level payments required do not start for twelve months after funding date. It was approved in the amount of $79,000.00. As of Plan filing date, September 21, 2020, none of that money had been spent, and it can only be used for "working capital" for expenses incurred after the start of the Covid-19 pandemic. PTSI will start drawing down the loan proceeds to defray labor and materials costs after September 21, 2020.

The SBA loan should enable PTSI to improve the Plan treatment of the Texas Comptroller (represented by the TEXAS ATTORNEY GENERAL).*

### III. A LIQUIDATION ANALYSIS

Equipment. The major assets of a construction company, when it has a stationary sites, usually consist of its equipment PTSI travels to its jobs, however, and it travels light. It does not have a large yard full of construction machinery that can conveniently service numerous jobs in a large metropolitan area. Once on-site, PTSI can rent equipment as needed, thereby avoiding costly debt service and banking expense on equipment it could have purchased. The Schedules of assets in this case, hereto attached as Exhibit "2," include a list of its equipment. Exhibit "3"

---

* The First Amended version of this Plan "capped" the distribution to the ATTORNEY GENERAL on uncollected sales tax at $79,000.00. This modification increases that amount and adds interest (accrued and future) to the payout.

6

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 13 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 7 of
114

hereto is an appraisal done in 2019 by a local professional. The Debtor's Schedules estimated the value of PTSI's equipment at $7,700.00. That is consistent with the appraisal hereto attached as Exhibit "3."

Land and building. PTSI rents its yard space and building from Mr. Cicchetti. The rent is typical of what similar facilities would cost in El Paso. PTSI has no ownership interest in them.

Inventory. PTSI does not maintain an extensive inventory of supplies, parts, or fixtures. The Schedules in this case valued the inventory at $3,000.00.

Accounts receiveable. As of April 17, 2020, PTSI's accounts receiveables stood at $18,886.31, all of it collectable. That number has fluctuated since; at the end of August it was $60,133.56. Receiveables of a construction business, if it suddenly has to liquidate, are usually subject to charge-backs.

Bank balances. PTSI had just been "cleaned out" of bank deposits by the Texas Comptroller as of petition date. The Comptroller levied on $22,000 in PTSI's Chase Bank account the previous day. The Debtor-in-Possession account's monthly statements since, are included in the Monthly Operating Reports which are hereto attached as Exhibit "4." Of course, receiveables drop as they become deposits and get spent on expenses, materials, and labor.

Intangibles. PTSI's intangibles include its contracts waiting to performed. These are non-assignable, personal services contracts. To the extent these are partly-performed, that value is shown in Accounts Receiveables, above. It PTSI were to be suddenly liquidated in a hypothetical conversion of this case to Chapter 7, any value of work-in-progress would probably be completely set off by the job site owners, for delay damages and the costs of bringing in a replacement contractor to finish the jobs.

7

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 14 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 8 of
114

The SBA loan money. Because of restrictions on what the SBA Economic Injury and Disaster Loan money can be used for, a liquidation could not apply any of the loan proceeds to debts incurred before January 31, 2020. The funds could be used only for debts incurred thereafter.

Liens on the foregoing assets. There is a lien held by the City of El Paso Tax Collector, and it encumbers the Debtor's equipment and inventory, to the extent of their value, $10,700.00. The balance of the City of El Paso Tax Collector's claim, which was filed for $63,151.56,* has been relegated through a claim objection and an Agreed Order, to general unsecured status in this case. *See* the Agreed Order between to Debtor and the Tax Collector, hereto attached as Exhibit "5." In short, a liquidation in this case, by a hypothetical Chapter 7 Trustee, would probably result in a recovery for the City of El Paso Tax Collector, and no one else. In the unexpected event that some additional assets came into the hands of the Chapter 7 Trustee, they would go to pay priority claims, which are (a) approved fees of the Debtor's attorney and fees and expenses of the Subchapter V Trustee; and then (b) the claim of the Texas Comptroller for roughly $132,000.00.

## IV. PROJECTIONS BY THE DEBTOR OF ITS ABILITY
## TO MAKE PAYMENTS UNDER THIS PLAN OF REORGANIZATION

Attached hereto as Exhibit "6" are the Debtor's profit-and-loss statements for the years 2016, 2017, 2018, and 2019. They defy predictability. 2016 and 2019 showed modest annual profit ($53,016.62 and $62,891.71). 2018 was more profitable ($165,864.86). 2017 showed a loss of $-81,492.65. In every one of the four years, the Debtor had at least one quarterly loss. The Debtor has never had four to five years of consistent profit, which is what a plan of reorganization ordinarily requires. Presently, the Debtor is "in the black" since petition date.

---

\* There has been some conjecture from the Texas Comptroller and the United States Trustee in this case, that the Debtor has more depreciable property than $10,700 worth, because of the amount of depreciation taken on Mr. CICCHETTI's 1040 tax return. But PTSI is an "S" corporation, and it does not file its own return. The gains, losses, and deductions of the business "flow through" to Mr. CICCHETTI. Mr. CICCHETTI personally owns the depreciated assets on his tax return.

8

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 15 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 9 of
114

Year-to-date for 2020, however, it shows a $16,000 loss on a cash basis. The Debtor would be $6,000 to the good for the year, cash-flow-wise, if the Comptroller had not levied upon the Chase Bank account.

A projection or calendar of the dates and amounts of the Plan payments, is hereto attached as Exhibit "7."

Whether the Debtor will be able to make the projected payments, depends on how many construction contracts it can obtain, how accurately the Debtor can forecast the cost of performing the contracts, how promptly and fully the customers pay, and natural phenomena (weather) and social phenomena (the general economy and the Covid-19 pandemic). Historically, the Debtor has usually experienced lulls in its construction activity. This Plan, rather than forecasting there will be no lulls, deals with the lulls by allowing the Debtor extra months to make the payments. If the Plan treatment calls for 48 monthly payments to a creditor, the Debtor shall have up to 60 months to make the 48 payments. If the creditor is treated with a 36-month payout, the Debtor shall have 48 months to make the 36 payments. If the creditor is treated with a 16-calendar-quarters payout, the Debtor shall have 20 quarters in which to make the 16 quarterly payments, but as to the TEXAS COMPTROLLER not more than two quarters in succession. With specific regard to the priority claim of the TEXAS COMPTROLLER (the ATTORNEY GENERAL), there are supposed to be 45 monthly payments but the Debtor shall be able to use eight "lull" months, but not more than three in succession. In this way the Debtor can use "lull" months as needed, but in no case is the Debtor to use any "lull" interval before the Plan has reached its seventh month. If the Debtor does not need any "lull" intervals, the Plan will be completed according to the original schedule. The use of any "lull" months will cause some accrued interest to be still due on interest-bearing claims after the creditor has received the specified number of payments. The Plan shall continue in the same monthly or quarterly payments, as applicable to that creditor, until the accrued interest is satisfied. If this method causes the payout on priority tax claims to go past five years from petition date, PTSI requests consent from the affected priority claimholder, under the main clause of 11 U.S.C. § 1129(a)(9).

9

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 16 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 10 of
114

The Subchapter V Trustee is to keep a log of how many payments the Debtor has enabled him to make to each creditor. If the Debtor uses any "lull" privilege, the Debtor must inform the Subchapter V Trustee which creditors are receiving a "lull" treatment instead of the regular installment, so that the Subchapter V Trustee can keep track of who is getting paid.

The Debtor does not expect to have earnings in excess of the payouts provided in the Plan. The Debtor expects to need some or all of the "lull" months (or quarters), in order to achieve the Plan payout.

## V. DEBTS TO BE DEALT WITH BY THE PLAN,
## AND THE DISTRIBUTION FUNCTION IN THIS CASE

The following is a brief sketch of the claims that are contending for payment in this case:

$15,000.00 estimated fees and expenses for Debtor's attorney, up to
Confirmation Effective Date.
$6,000.00 estimated fees and expenses of the Subchapter V Trustee,
up to Confirmation Effective Date.
$7,956.18 IRS' claim for estimated Form 941 taxes.
$33,000.00 Trust fund sales tax collected
$10,700.00 City of El Paso Tax Collector secured claim
$112,000.00 Priority uncollected sales tax
$43,378.19 General unsecured claims
$4,300.00 Administrative Convenience Class
$79,000.00 for the Small Business Administration's Economic Injury and
Disaster Loan

The treatments of these debts are specified in Articles VIII-IX, below.

The Subchapter V Trustee BRAD ODELL is to have the distribution function in this case. Because the distribution task is simple, and the creditors are not numerous, and the Trustee does not have a support staff to maintain, the Trustee's surcharge upon the Debtor's regular Plan payment to the Trustee shall be 5%, deducted as each Debtor payments comes in. As for his pre-confirmation fees and expenses, the Subchapter V Trustee is to submit his fee and expense application within 45 days of the Order Confirming the Plan in this case, and once his fees and expenses are approved, they shall be paid by the Debtor in six level monthly payments starting

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 17 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 11 of
114

on the 15th day of the month following their approval by the Court.

## VI. VOTING ON THE PLAN, OBJECTING TO THE PLAN,
## AND THE CONFIRMATION PROCESS

The Court has not yet confirmed this Plan. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1. Time and Place of the Hearing to Confirm the Plan.

The hearing is set for November 3, 2020 at 10:00 o'clock a.m. in the United States Bankruptcy Court for the Western District of Texas, El Paso Division, 511 E. San Antonio Street, Fourth Floor, El Paso, Texas 79901.

### 2. Deadline For Voting to Accept or Reject the Plan.

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the attorney for the Debtor, E.P. BUD KIRK, 600 Sunland Park Drive, Building Four, Suite 400, El Paso, Texas 79912. Your ballot must be RECEIVED by 5:00 o'clock p.m. MT on October 19, 2020 or it will not be counted.

### 3. Deadline for Objecting to the Confirmation of the Plan.

Objections to the confirmation of the Plan must be filed with the Court and served upon the Debtor's attorney, E.P. BUD KIRK, at 600 Sunland Park Drive, Building 4, Suite 400, El Paso, Texas 79912, on or before 5:00 o'clock p.m. MT on October 19, 2020.

If you want additional information about the Plan, you should contact the Debtor's attorney, E.P. BUD KIRK, telephone number (915) 584-3773, facsimile number (915) 581-3452, or email budkirk@aol.com.

To be confirmable, a Small Business Debtor Subchapter V Plan must meet the requirements listed in § 1191 of the Code. These include the requirements that the Plan must be

11

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 18 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 12 of
114

proposed in good faith; that at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and that the Plan must be feasible. The Court must also find that creditors were adequately informed by the Debtor's history of the business, schedules of assets and debts, cash flow deposits and projections, and a liquidation analysis. These requirements are not the only requirements listed in § 1191, and they are not the only requirements for confirmation. A full copy of Code § 1191 is hereto attached as Exhibit "10."**

"Creditors" have a voice in whether a Plan of Reorganization gets confirmed. "Creditors" are those persons or entities to whom the debtor owes a debt. The debt can be one for which a timely and allowed proof of claim had been filed, or the debt can be one which the Debtor listed on his schedules D (secured claims), E (priority claims), F (general unsecured claims), or G (unexpired leases and executory contracts). Whether proof of claim is timely is discussed in this Plan at its Article VII. A proof of claim is deemed allowed until someone-- usually but not always the Debtor--files an objection to it. While the objection is pending, the creditor has no voting rights and no rights to object to the Plan. To regain those rights, the creditor must either win the objection hearing, or if the hearing will not take place prior to the Court's confirmation decision, the creditor must file a motion to have the proof of claim "estimated" by the Court for voting purposes or for the purposes of objecting to the Plan.

Those creditors who do not have voting rights, are those holding administrative claims under 11 U.S.C. § 503, and those holding priority claims for taxes under 11 U.S.C. § 507(a)(8). Their only means of opposing a Plan, is to object to confirmation by pointing out why the Plan or Plan proponent does not fulfill the requirements of 11 U.S.C. § 1191. If they do not object, then they are deemed to have accepted the Plan.

---

** Section 1191 refers to § 1129 for much of its content, and § 1129 is also appended hereto.

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 19 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 13 of
114

Claims for administrative expenses and priority taxes are not supposed to be assigned to Classes in a Chapter 11 Plan, because Classes imply voting rights. Some differentiation among non-classified claims is useful, however, because their required treatment under the Bankruptcy Code can be different. For instance, administrative claims are supposed to be paid in full, or according to strict contract terms, when confirmation occurs.<sup>***</sup> Priority taxes, in contrast, must be paid in full within five years of petition date, with interest at the prevailing rate in the  tax law. <sup>***</sup> In order to describe and arrange these non-voting claims for Plan treatment, this Plan will refer to them as "non-voting claims, Group A" for administrative claims, and "non-voting claims, Group B" for priority tax claims.

For creditors with voting rights, the Bankruptcy Code has tallying rules. Votes "count" only if the claim is "impaired." A claim is "impaired" if its rights outside of the bankruptcy case are hindered or reduced by the Plan in some way. An unimpaired claim does not count, either as an acceptance or as a rejection of the Plan. Votes are counted according to classes. To win a class, the Plan proponent has to achieve two separate goals. The first is called "majority": winning a majority of the votes cast within the class. The second, called "numerosity," means winning at least two-thirds of the dollars voted in each class.

If the Plan proponent wins each voting Class, and the Court finds that the Plan complies with the requirements of 11 U.S.C. § 1191, then the Plan is confirmable. (A finding that the Plan complies with § 1191 necessarily means that the Court has overruled any objections to confirmation.)

If the Plan proponent wins none of the voting classes, but satisfies subsections (1) through (7), (9), and (11) through (14) of Code § 1129(a), then the Plan proponent may request

---

<sup>***</sup> Unless the creditor consents to some deferral of payment.

13

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 20 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 14 of
114

"cram down."**** In "cram down," the Court has to find that the Plan satisfies all the requirements of §§ 1191 and 1129(a) have been met, except for subsections (8), (10), and (15). And then the Court, if it finds that the Plan is "fair and equitable" to each rejecting class, can confirm the Plan despite the opposing votes.

For a Subchapter V Plan to be "fair and equitable" in cram-down, secured creditors must retain their liens and be paid in installments the value of their collateral, with interest, or else receive a surrender of their collateral. General unsecured creditors must receive at least as much as the Debtor can afford to pay from its projected disposable income over at least a 3-year period (or longer if the Court so orders).

**You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on what is "fair and equitable" are numerous and complex.**

Generally, it is rare for a debtor to get a high rate of voting participation in the Plan confirmation process. Occasionally, the level of creditor apathy is such, that whole classes of claims may go without votes. In the event that at least one class has actually voted to accept the Plan, and one or more other classes attract no votes at all, the debtor will ask the Bankruptcy Court to rule that each class which had no votes cast at all, is "deemed" to have accepted the Plan. *See In re Cypresswood Land Partners, 1*, 409 B.R. 396 (S.D. Tex. 2009)(Bohm, B.J.), *following In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988) and construing Code § 1126(b)(1) together with § 1129(b); *See also In re Trevarrow Lanes, Inc.*, 183 B.R. 475 (Bankr. E.D. Mich. 1995), *holding* that Code Sections 1129(a)(10) and 1129(b), read together, preclude the reading of § 1129(a)(8) as requiring votes in all classes. Otherwise, the creditors who do not care enough to bother to vote, can make confirmation impossible to achieve. *Cypresswood Land Partners*, 409 B.R. at 430. THEREFORE IF YOU DISAPPROVE OF THE PLAN, YOU

---

**** This expression, one of hundreds of everyday figures of speech that have carried over from farming generations, comes from the practice of cramming grain down a goose's neck. Unless force-fed, geese will nibble and not ingest much at one meal.

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 21 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 15 of
114

SHOULD VOTE TO REJECT IT, OR YOUR SILENCE WILL BE COUNTED AS A
"DEEMED" ACCEPTANCE.******

## VII. ALLOWANCE AND DISALLOWANCE OF CLAIMS

Allowed Claims. Bankruptcy claims arise from debts. Debts become allowed claims
when the creditor files a timely proof of claim with the Bankruptcy Court, or, in Chapter 11
cases, when the Debtor schedules the claim and does not indicate on the Schedules that the claim
is contingent, unliquidated, or disputed. If the Schedules in a Chapter 11 case show that the debt
is contingent, unliquidated, or disputed, the creditor must file a timely proof of claim. The
amount of the proof of claim shall supersede the amount scheduled by the Debtor.

A proof of claim, once filed, or once scheduled by a Chapter 11 Debtor as non-
contingent, liquidated, and undisputed, can be objected to by the Debtor or any other party in
interest. The filing of the objection operates to disallow the claim temporarily, until the
Bankruptcy Court rules upon the objection.

See Article IX below for a discussion of claim timeliness. OR In the instant case, the
period for filing claims by non-governmental units expired on October 14, 2020.

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a
disputed claim until after such claim is allowed by a final non-appealable order. At that point the
claimant is to receive any distributions they would have received if no objection had been filed
and the claim had been presented in the ultimately-allowed amount.

---

****** Debtor does not mean to suggest that a sole accepting class can be a "deemed" class to
satisfy § 1129(a)(10). *And see In re Adelphia Communications Corporation*, 368 B.R. 140 (Bankr. S.D.
N.Y. 2007), *holding* that where a plan expressly and conspicuously informed creditors that non-voting
classes would be presumed to have accepted the plan, "deemed acceptance" was appropriate.

15

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 22 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 16 of
114

Settlement of Disputed Claims. The Debtor will have the power and authority to settle or adjust a claim that is under objection, with Court approval and, if required by the Court, compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## VIII. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

Unclassified Claims. Under Code § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. Neither are United States Trustee's fees in a class of claims. Non-classified claims do not have voting rights, but they have objection rights.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan.

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|--------------------|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | | Paid in full on the Effective Date of the Plan, or according to terms of obligation if later. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date. | N/A | Paid in full on the Effective Date of the Plan, or according to terms of obligation if later. |
| Estimated Professional Fees, subject to approval of the Court. | | The Subchapter V Trustee shall pay the unpaid balance of the Debtor's Attorney's fees, in at-least-level installments over a period not to exceed twelve months, commencing 15 days after those fees are approved by the Court or 15 days after Confirmation Effective Date, whichever is later.<br><br>The pre-Confirmation Effective Date fees and Expenses of the Subchapter V Trustee are to be paid in at-least-level monthly installments over a period not to exceed twelve months, commencing on the 15th day of the month following Confirmation Effective Date or 15 days after those fees |

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 23 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 17 of
114

| | | and expenses are approved by the Court, whichever is later. |
|---|---|---|
| Clerk's Office Fees | | Paid in full on the Effective Date of the Plan |
| **TOTAL** | $ | |

Priority Tax Claims. Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees to different terms, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the date of the order of relief (the first day of the case). The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Texas Attorney General | $33,574.38 in unpaid principal, for collected sales tax, plus $45,305.12 in principal tax on unsupported sales and disallowed deductions; less credits of $27,112.93 for payments and levy; plus 75% of accrued interest on the priority | | The Debtor shall pay the $104,932.12 priority claim of the Texas Comptroller for collected sales taxes, in 45 monthly payments over as many as 53 months, in monthly installments of $2,597.81, including interest on the unpaid principal amount of the debt from Confirmation Effective Date forward at the statutory rate of 5.75% per annum. *See* Plan Article IV regarding the 53 months and the interest. Payments shall begin on the first day of the month following Confirmation Effective Date. |

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 24 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 18 of
114

|  |  |  |  |
|---|---|---|---|
|  | tax up to Plan Effective Date, which computes to $26,052.621 The total priority claim is $104,932.12. |  |  |
| IRS | $7,956.18 (estimated claim) |  | PTSI has objected to the IRS estimated claims, because it had no employees of its own for the estimated years, 2011-2019. The Debtor uses an employment service for its staffing. The eventual claim amount is to be paid in full in 48 level payments spread over as many as 60 months together with statutory interest at the rate of 3% per annum from Confirmation Effective Date forward. *See* Plan Article IV. |
| City of El Paso | $9,073.37 |  | PTSI will pay the priority tax claim of The City of El Paso for $9,073.37 in 36 monthly installments of $301.37 each, including interest at the rate of 12% per annum from petition date forward (April 17, 2020). The Debtor shall have up to 48 months in which to pay this priority tax. See Plan Article IV. |

## THE GROUPS AND CLASSES OF CLAIMS

Administrative Claim, Group A. The Subchapter V Trustee shall pay the unpaid balance of the Debtor's Attorney's fees, in at-least-level installments over a period not to exceed twelve months, commencing 15 days after those fees are approved by the Court or 15 days after Confirmation Effective Date, whichever is later.

Administrative Claim, Group B. The pre-Confirmation Effective Date fees and Expenses of the Subchapter V Trustee are to be paid in at-least-level monthly installments over a period not to exceed twelve months, commencing on the 15th day of the month following Confirmation Effective Date or 15 days after those fees and expenses are approved by the Court, whichever is later.

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 25 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 19 of
114

Priority Tax Claim, Group C. The Debtor shall pay the $104,932.12 priority claim of the TEXAS COMPTROLLER (the ATTORNEY GENERAL) in 45 monthly payments over as many as 53 months of the Texas Comptroller for collected and uncollected sales taxes, in monthly installments of $2,597.81 each, including interest from Confirmation Effective Date forward at the statutory rate of 5.75% per annum. *See* Article IV as to the accumulation of interest on the claim and how the 53 months can be used. Payments shall begin on the first day of the month following Confirmation Effective Date. If the Debtor completes this payout, any unasserted balance will be discharged by the combination of consent at the time of confirmation and the completion of the Plan payments. *See* 11 U.S.C. §§ 1123(a)(4), 1129(a)(9)(C), 1141(d)(1), and 1191. This plan requires that the debtor must complete all Plan payments to get a discharge of sales tax claims, even if confirmation is consensual.

Priority Tax Claim, Group D. PTSI will pay the priority tax claim of The City of El Paso for $9,073.37 in 36 monthly installments of $301.37 each, including interest at the rate of 12% per annum from petition date forward. The Debtor shall have up to 48 months in which to pay this priority tax. *See* Plan Article IV.

Priority Tax Claim, Group E. To the extent a priority tax claim for the IRS is allowed, the Debtor shall pay it in 36 installments over a period of up to 48, including interest at the Commissioner's published rate in effect on Effective Date of Confirmation. *See* Plan Article IV for how the 48 months to pay the debt in full can be used. Rather than object to the IRS estimated claims, PTSI will file returns for the estimated years, 2011-2019. PTSI believes the actual return amount, will be low, because the Debtor uses an employment service for its staffing. The eventual claim amount is to be paid in full in 48 level payments spread over as many as 60 months together with statutory interest at the rate of 6% per annum from Confirmation Effective Date forward.

19

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 26 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 20 of
114

## IX. CLASSIFIED CLAIMS

Class 1. The secured claim of The City of El Paso Tax Collector. The Trustee shall pay the secured claim of the City of El Paso, Texas Tax Collector in the allowed amount of $10,700.00, together with interest at the rate of 12% per annum from petition date forward, in monthly installments of $355.39 each over a term of 36 months, commencing on the 10th day of the month following Confirmation Effective Date. The Debtor shall have 48 months in which to make the 36 payments; *see* Plan Article IV for how the 48 months can be used.

Class 1A. Secured Claim of the United States Small Business Administration. The Debtor incurred pre-petition an Economic Injury and Disaster Loan in the amount of $79,000.00. It will repay this loan according to the loan contract: no payments for the first twelve months, then level monthly installments of $382.00 each beginning June 22, 2021 for the next thirty years, including interest at 3.75% per annum. This loan is unimpaired. The SBA is not entitled to vote and shall retain its lien.

Class 2. Administrative Convenience Class. The Trustee shall pay the claims of any general unsecured creditors under $2,500.00 a dividend of 50 per cent of their allowed amounts, in a single payment on the 70th day after Confirmation Effective Date. This is an administrative convenience class. The claims of the members of the Class are shown on Exhibit "8" hereto attached.

Class 3. General Unsecured Claims of $2,500 or more. The Debtor shall pay the general unsecured claim of the City of El Paso Tax Collector, allowed in the amount $43,378.19, in sixteen quarterly installments of $250.00 each, on each December 31, March 31, June 30, and September 30, following Confirmation Effective Date. The Debtor shall have up to twenty quarters in which to make the sixteen installments. *See* Plan Article IV concerning how the Debtor can use the twenty quarters. There are two creditors in this Class. The other is the TEXAS ATTORNEY GENERAL. Their Class 3 claim is for $37,102.56, consisting of

20

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 27 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 21 of
114

$12,676.37 for the audit amount of "flagged" taxable expense, $4,322.96 in interest thereon, a penalty claim of $11,419.02, and $8,684.21 for the interest reduction on the priority tax claim in Group "C." The ATTORNEY GENERAL's Class 3 claim shall be paid 16 (sixteen) quarterly installments in the amount of $213.80 in the total amount of $3,420.80 in satisfaction of the General Unsecured Claim. The first installment is due on December 31, 2020. The Comptroller shall retain its lien until Claim 3-2 is paid in full as provided herein. The dividend of payment to Class 3 is 9.22%. Class members have no liens to retain. If this case is ever dismissed for default, however, the Class 3 members may re-assert liens that were disallowed in this case.

Class 4. Claims of Equity Security Holder. The equity security holder in this case is Jim Cicchetti, the sole shareholder of the Debtor. He shall retain his stock in the Debtor. Such retention is permitted under 11 U.S.C. § 1191(a) or (b), whichever applies.

## X. PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES
Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan:

Month-to-month lease of the portion it now occupies, of the yard and building owned by JIM and JEANNE CICCHETTI at 7349 North Loop, El Paso, Texas.

(b) Upon the Effective Date of this Plan the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or assumed previously with Court approval. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Effective Date of this Plan, unless the Court has already set an earlier deadline. Any such claim shall be subject to objection until the 60th day after Effective Date and shall be relegated to Plan Class 9, where it shall share *pro rata* in the distribution

21

20-30522-hcm   Doc#66   Filed 11/06/20   Entered 11/06/20 13:46:50   Main Document   Pg 28 of
20-30522-hcm   Doc#56   Filed 10/23/20   Entered 10/23/20 12:47:09   Main Document   Pg 22 of
114

already provided there.

## XI. GENERAL PROVISIONS

At any time during the term of this Plan, the Debtor may pre-pay any creditor. If the pre-payment places the Debtor "ahead" of where the Debtor would be on its amortization of the claim, the Debtor may, at its option, "bank" the pre-payment and not send any more payments for that claim to the creditor until the passage of time in the claim's theoretical model[*******] amortization has used up the pre-payment. If the Debtor is able to sell a retained real property or machinery or a vehicle or any exempt item during the term of this Plan, the sale shall not require Court approval, but all liens retained thereon under this Plan shall be paid from the closing. Debtor shall also bring current any overdue Plan payments to other creditors from the closing. Debtor shall have discretion to apply or not apply any remaining sale proceeds to unaccrued Plan payments or to hold such proceeds for costs of future operations and to pay taxes arising from the sale.

For all creditors who are supposed to be paid in regular monthly installments, it is problematic for a construction company to be able to work without interruptions for five years straight, due to inclement weather, strikes, supply shortages, illnesses, and other causes. The Debtor may invoke payment moratoriums of one month each, a total of six times during the Plan, sending to the creditor a message that the moratorium is being used, and what the reason for the moratorium is.

Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Article VII below) in cash, or upon the original contract terms, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

---

[*******] A theoretical model amortization would be, that every Plan payment to a creditor will have been made on time, and to the exact penny provided for in that Class.

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 29 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 23 of
114

<u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in " 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. Other definitions important for the meaning of this Plan are the definitions in Exhibit "1."

<u>Effective Date of Plan</u>. The Effective Date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, due to an appeal from order of confirmation, the Effective Date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

<u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

<u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon that entity, and will inure to the benefit or burden of the successors or assigns of, such entity, unless the case law applying Bankruptcy Code § 1141 and/or the case law construing the Fifth Amendment to the U.S. Constitution provide to the contrary.

<u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

<u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

<u>Corporate Governance</u>. If the Debtor is a corporate entity, the Debtor shall be governed,

23

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 30 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 24 of
114

as to its internal affairs, by the Texas Business Organizations Code and other applicable Texas statutes.

    Partnership Governance. If the Debtor is a limited or a general partnership, the debtor's internal affairs shall be governed by the Texas Uniform Revised Partnership Act or the Texas Uniform Revised Limited Partnership Act, whichever applies.

## XII. GENERAL PROVISIONS: CLAIMS FILING

    All claims must be filed in accordance with Bankruptcy Rule 3002. In Chapter 11 cases, non-governmental unit creditors who have not been scheduled by the Debtor as non-contingent, liquidated, and undisputed claimants, must file claims before the Bar Date set in the Notice to Creditors by the Clerk of the Court (June 26, 2020), or they will be excluded from Plan distribution. (Governmental unit creditors have a bar date set by the Code at 180 days after petition date, or October 14, 2020.) In order to enable distribution to commence or to permit the allowance of a claim to be determined, the Debtor may file a Proof of Claim within 30 days after the Bar Date on behalf of any creditor who has not filed a claim under the Bankruptcy Rules, or may schedule an omitted creditor as non-contingent, liquidated, and undisputed, at any time before the case is closed. An omitted creditor who had no knowledge of the Bankruptcy filing may also file a late claim, within 90 days of discovering the filing. Omitted creditors shall be entitled after filing, to catch up on distribution they would have received had their claims been timely.

## XIII. GENERAL PROVISIONS: EFFECT OF CONFIRMATION; VESTING OF ASSETS

    The effect of confirmation in this case will depend on whether the Plan is accepted by all classes of voting creditors and confirmed over any objections, under 11 U.S.C. § 1191(a). If that is the case, then confirmation will leave assets vested in the estate and subject to the liens retained thereon; except that the Debtor shall not retain any property that is being surrendered to

24

lienholders under this Plan. At confirmation all non-surrendered assets which were property of the estate, shall vest in the Debtor, free and clear of the claims and liens and interests of creditors, except as expressly preserved in the Plan. The Debtor shall no longer have to get prior Court approval to sell or refinance or borrow upon particular assets, as if they were still property of the estate. *See* 11 U.S.C. § 1141 (copy hereto attached as Exhibit "9.") If this is an individual's case, exempt property will have already vested in the Debtor through the Debtor's claims of exemption, and not through this Plan. If confirmation has to be achieved through 11 U.S.C. § 1191(b) however, due to rejecting classes or objections, then all assets will remain property of the estate, unless exempt in an individual's case. A court order shall be necessary to sell any non-exempt assets, if confirmation has to be obtained under § 1191(b).

In the event the Debtor sells, conveys or transfers any of the properties which are the collateral of the CITY OF EL PASO claim or post confirmation tax debt, the Debtor shall remit such sales proceeds first to the CITY OF EL PASO to be applied to the CITY OF EL PASO secured and priority tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing prior to any disbursement of the sale proceeds to any other person or entity.

Regardless of whether confirmation is achieved by consensus or by Court order over rejecting votes or objections, the Debtor must complete all Plan payments before a discharge can be conferred.

### XIV. GENERAL PROVISIONS: TREATMENT OF SECURED CLAIMS, ATTORNEY'S FEES UPON SECURED CLAIMS

General Provisions for All Secured Claims: The status of secured claims shall be determined in accordance with Section 506 of the Bankruptcy Code and Bankruptcy Rule 3002. Claims originally scheduled as secured but which are later found by the Court to be unsecured will be treated as unsecured.

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 32 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 26 of
114

The value, as of the Effective Date of this Plan, of property to be distributed under the Plan on account of secured claims is not less than the allowed amount of such claims. The holders of all secured claims described above shall retain their liens on the collateral which is security for such claims, except where otherwise expressly stated in this Plan.

Any secured claimant who wishes to recover attorney's fees must file a proof of claim therefor with notice to the Debtor before the thirtieth day after the Effective Date of this Plan. Debtor shall in turn have until the sixtieth day after the Effective Date of this Plan, to object to any claim for attorney's fees. To the extent the attorney's fees are allowed, the Debtor shall spread the payment of the claim for attorney's fees over the entire term of the loan amortization, in level amounts. 11 U.S.C. § 506. The Debtor shall add to the Plan's stated periodic payments on the pertinent claim, as stated within the Class treatment above, any additional amount approved after Effective Date, needed to amortize the allowed attorney's fees.

Secured creditors should also read Article XIX below, concerning the impact of this Plan upon the covenants of their loan documents.

## XV. GENERAL PROVISIONS: POWERS RETAINED BY THE DEBTOR

The Debtor shall have the right to exercise all avoidance, litigation, and turnover powers conferred upon Trustees (or Debtors-in-Possession) under the Bankruptcy Code. The Debtor may object to any claim at any time during the case, provided, if the objection is based on pre-confirmation events and is made post-confirmation, the Debtor disclosed the grounds of the objection prior to voting on confirmation, either in the accompanying Disclosure Statement or in this Plan.

## XVI. GENERAL PROVISIONS: DURATION OF THE PLAN; LIQUIDATION TEST; SUBSEQUENT MODIFICATIONS

26

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 33 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 27 of
114

.

  This Plan shall reach its conclusion on the fifth anniversary of Confirmation Effective Date.
General unsecured creditors' estimated recovery percentage is 9.22% of the allowed amounts of
their claims.

  The Court may, from time to time during the first 36 months of the Plan, modify this Plan to
increase or reduce the amount of the installments provided by the Plan, or to extend or shorten
the time for any such payments when it shall be made to appear, after hearing upon such notice
as the Court may specify, that the circumstances of the Debtor so warrant or require; provided,
however, that nothing in this Plan shall be construed to prevent the granting of the discharge of
the Debtor as provided in Sections 1141(d)(1)(A), 1191(a), and if applicable,1191(b) and 1192 of
the Bankruptcy Code (copies hereto attached as Exhibit "9" and Exhibit "10").

### XVII. GENERAL PROVISIONS: TIMING OF PAYMENTS, PRE-PAYMENTS

  At any time during the term of this Plan, the Debtor may pre-pay any creditor. If the pre-
payment places the Debtor "ahead" of where the Debtor would be on its amortization of the
claim, the Debtor may, at its option, "bank" the pre-payment and not send any more payments
for that claim to the creditor until the passage of time in the claim's theoretical model*
amortization has used up the pre-payment. If the Debtor is able to sell a retained real property or
machinery or a vehicle or any exempt item during the term of this Plan, the sale shall not require
Court approval, but all liens retained thereon under this Plan shall be paid from the closing.
Debtor shall also bring current any overdue Plan payments to other creditors from the closing.
Debtor shall have discretion to apply or not apply any remaining sale proceeds to unaccrued Plan
payments or to hold such proceeds for costs of future operations and to pay taxes arising from
the sale.

---

* A theoretical model amortization would be, that every Plan payment to a creditor will have
been made on time, and to the exact penny provided for in that Class.

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 34 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 28 of
114

## XVIII. DEFAULT

The due dates for the Debtor's payments under this Plan, shall be subject to a grace period of
10 days for contractual secured creditors and 30 days for governmental unit creditors and general
unsecured creditors.  The due dates are also subject to the provisions for construction "lulls" in
Plan Article IV.  Once the grace period has run, any contractual creditor who has not received
payment that was due from the Debtor, may resort to the remedies contained in its contract,
security agreement, deed of trust, or note, and proceed accordingly, giving the Debtor any notice
and opportunity to cure required by applicable law.  However, with regard to the claims of the
INTERNAL REVENUE SERVICE, the TEXAS ATTORNEY GENERAL and THE CITY OF
EL PASO TAX COLLECTOR, the following terms of default apply:

### INTERNAL REVENUE SERVICE

The debt owed by the Debtor to the INTERNAL REVENUE SERVICE ("IRS") is a
non-dischargeable debt, except as otherwise provided for in the Code, and that if the
Debtor defaults, the IRS is not subject to the provisions of the Bankruptcy Code so that
the IRS can take whatever actions are necessary to collect said debt in the event of
default;  the federal tax liens survive the Plan confirmation, a bankruptcy discharge, and
dismissal of the case.  The liens continue to be enforceable against all of the Debtor's
property under federal law.

A failure by the Debtor to make a payment to the IRS pursuant to the terms of the
Plan and/or failure to remain current on filing and paying post-confirmation taxes, shall
be an event of default, and as to the IRS, there is an event of default if payment is not
received by the 15th day of each month when a payment is due.  If there is a default, the
IRS must send written demand for payment, and said payment must be received by the
IRS within 15 days of the date of the demand letter.  The Debtor can receive up to three
notices of default from the IRS, however, on the third notice of default from the IRS the
third notice cannot be cured, and the IRS may accelerate its allowed claim(s), past and

28

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 35 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 29 of
114

future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the IRS, secured, unsecured priority, and unsecured general.

The IRS is bound by the provisions of the confirmed Plan and is barred under 11 U.S.C. § 1141 from taking any collection actions against the Debtor for prepetition claims during the duration of the Plan (provided there is no default as to the IRS). The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS having been made, or (2) 30 days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

## ATTORNEY GENERAL

A failure by the Debtor to make a required plan payment to the Comptroller, under this Plan and its Article IV, shall be an Event of Default. If the Debtor fails to cure an Event of Default as to the Comptroller within ten (10) days after service of a written notice of default, then the Comptroller may (a) enforce the entire amount of its claim including all principal, interest and penalty; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court. The Debtor can receive up to (3) three notices of default, however, the third default cannot be cured.

## THE CITY OF EL PASO TAX COLLECTOR

The Reorganized Debtor may pre-pay the pre-petition tax debt to the City of El Paso at any time. The City of El Paso shall retain its statutory lien securing its pre-petition and post-petition secured tax debts until such time as the tax debt is paid in full. Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2021 and subsequent tax years) owing to the City of

29

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 36 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 30 of
114

El Paso in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the City of El Paso to file an administrative expense claim and/or request for payment. The provisions of the Agreed Order Regarding Partial Objection to Claim #1 of the City of El Pso (ECF #26) is incorporated by reference as if fully set forth herein and survive the confirmation of this Plan.

Should the Reorganized Debtor fail to make any payments as required in this Plan as informed by its Article IV, the City of El Paso shall provide written notice of that default by sending written notice by certified mail to Debtor, Debtor's attorney and the Chapter V Trustee advising of that default, and providing the Reorganized Debtor with a period of twenty (20) days to cure the default. In the event that the default is not cured within twenty (20) days, the City of El Paso may, without further order of this Court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt, shall be considered an event of default. The City of El Paso shall provide Debtor with written notice of that default and a twenty (20) day opportunity to cure said default. In the event that the Reorganized Debtor fails to timely cure the post-petition and/or post-confirmation default, the City of El Paso may, without further order of this court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than three (3) Notices of Default. In the event of a fourth default, the City of El Paso may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

## XIX. EFFECT OF THIS PLAN ON TERMS AND CONDITIONS OF SECURED CREDITORS' LOAN DOCUMENTS

The terms and conditions of this Plan shall supersede each secured creditor's loan document covenants, insofar as the following are concerned:

30

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 37 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 31 of
114

    a) The existence of any conditions of default which occurred prior to petition date, unless the Plan specifically provides for that particular creditor a cure of arrearages in addition to the maintenance of regular pre-bankruptcy contractual payments;

    b) Due dates for loan payments and loan maturity;

    c) Amounts of loan balances and installment payments;

    d) Interest rates;

    e) Default interest rates;

    f) Attorney's fees, except for services to be performed in the future that are not directly related to the bankruptcy case or Plan; and

    g) Loan document clauses allowing debt acceleration if the lender deems itself insecure, if bankruptcy has been filed, if pre-confirmation taxes are being paid through the Plan, or if some cross-default is being cured through the Plan.

This Plan shall not modify the existing covenants of any loan documents of the creditors in the Secured Classes, governing the following particulars:

    h) The maintaining of insurance upon the collateral;

    i) The payment of property taxes for years not covered by the Plan;

    j) Keeping the collateral in good condition;

    k) The furnishing of financial information, in forms commonly kept such as copies of financial statements, cash flow reports, and income tax returns, at reasonable intervals;

    l) Allowing the lender to inspect the collateral at reasonable times after a reasonable period of notice; and

    m) Terms or conditions required for the securitization of uniform instruments for real estate loans in federally-sponsored mortgage programs.

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 38 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 32 of
114

The intention of this Article XIX is two-fold: first, to prevent the lender from searching for or harboring a reason to declare the loan in default, once there is no more access for the Debtor to the Bankruptcy Court to adjust the borrowing relationship;  second, to eliminate as far as can practically be done, the need or perceived need for the drafting of a new set of loan papers, which directly costs the lender for its own attorney's fees and indirectly burdens the Debtor by adding legal expenses to the loan balance.

## XX. DISCHARGE

Discharge.  The operation and effect of the bankruptcy discharge in this case will depend upon whether this Plan is accepted by all the impaired classes that vote.  If it is so accepted, then the discharge will be according to 11 U.S.C. § 1129(a) and all subparagraphs of § 1129(a) except subparagraph (15);  and for a corporate debtor, such as PTSI, paragraphs 11 U.S.C. § 1141(d)(1)(A), (d)(3), and (d)(6) also govern the discharge.  In order to satisfy § 1129(a)(1), the Plan will have to obtain the consent of the Texas Comptroller to a less-than-full payment of the uncollected sales taxes owed to the Comptroller and some of the interest on the collected taxes. (The Plan already provides otherwise for full payment of taxes collected in a fiduciary capacity under Tex. Tax Code § 116 and 11 U.S.C. §§ 523(a)(1) and 507(a)(8)(C).  If this Plan has to be confirmed under 11 U.S.C. § 1191(b) because not all impaired voting classes accept it, then the discharge shall be governed by 11 U.S.C. §§ 1191(b), (c), and (d), as well as § 1192.  That means in this case that secured claims must be paid the full value of their collateral, with interest;  and that all claims must receive all of the Debtor's projected disposable income over the life of the Plan.

Even if confirmation is consensual, however, there shall be no discharge of any sales tax debt  until the Debtor has completed all Plan payments.

32

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 39 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 33 of
114

Date: _Oct. 23, 2020_

PTSI CONSTRUCTION, INC.

By: /s/ JAMES CICCHETTI
    JAMES CICCHETTI
Its: President

/s/E.P. BUD KIRK

E.P. BUD KIRK
Texas State Bar No. 11508650
600 Sunland Park Drive
Bldg. Four, Suite 400
El Paso, TX 79912
(915) 584-3773
(915) 581-3452 facsimile
budkirk@aol.com

Attorney for the Debtor

## CERTIFICATE OF SERVICE

    I do hereby certify that on the _22d_ day of October, 2020, I did cause a copy of the foregoing First Amended Small Business Debtor's Plan of Reorganization as Modified Prior to Confirmation Under 11 U.S.C. § 1193(a) to be mailed by postage pre-paid U.S. Mail to U.S. Trustee, P.O. Box 1539, San Antonio, TX 78205-1539; to Brad W. Odell, Subchapter V Trustee, 1500 Broadway, Ste. 700, Lubbock, TX 79401; to PTSI Construction, Inc., 7349 N. Loop, El Paso, TX 79915; to Comptroller of Public Accounts of the State of Texas, c/o Courtney J. Hull, Assistant Attorney General, Bankruptcy & Collections Division MC 008, P.O. Box 12548, Austin, TX 78711-2548; to City of El Paso, c/o Don Stecker, 112 E. Pecan Street, Ste. 2200, San Antonio, TX 78205; and to all parties in interest as shown on the attached list.

/s/E.P. BUD KIRK

E.P. BUD KIRK

4900-MC-102020

33

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 40 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 34 of
114

BC Landscaping, LLC
301 Lafayette
El Paso, TX 79915

CED Electrical Supply
11500 Rojas
El Paso, TX 79936

Internal Revenue Service
Centralized Insolvency Office
P.O. Box 7346
Philadelphia, PA 19101-7346

IRS Insolvency Office
300 E. 8th Street, Mail Stop 5026AUS
Austin, TX 78701

Phil's Plumbing Shop
7361 N Loop
El Paso, TX 79915

Sun City Winnelson
7179 Copper Queen
El Paso, TX 79915

Texas Comptroller
Revenue Accounting Div.-Bankr. Section
P.O. Box 13528
Austin, TX 78711

United States Attorney
Civil Process Clerk-
Internal Revenue Service
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216

United States Attorney General
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

U.S. Small Business Administration
Little Rock Commercial Loan Servicing Center
2120 Riverfront Dr., Ste. 100
Little Rock, AR 72202

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 41 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 35 of
114

# EXHIBIT "1"

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 42 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 36 of
114

## EXHIBIT "1"

## LIST OF DEFINITIONS

The following terms when used in this Plan have the following meanings:

1.    Administrative Expenses:  Claims and expenses for supplying services or goods to the
      Debtor post-petition, which are allowed under Bankruptcy Code Section 503.

2.    Allowed Claims:  Those claims which have been filed on or before the Bar Date with the
      Court or scheduled by the Debtor as liquidated, non-contingent, and undisputed, and
      which are not the subject of an Objection by the Debtor which is either pending or finally
      sustained by the Court.

3.    Bar Dates:  The last day to file a timely Proof of Claim in this case on account of a
      pre-petition debt.  To date the Court has set June 26, 2020 as the Bar Date for filing
      Proofs of Claim for non-governmental creditors.   The Bar Date for governmental
      creditors is set by statute at 180 days after petition date, or, in this case, October 14, 2020.
      Parties in interest should assume that if they have not filed Proofs of Claim by the
      applicable date, or been scheduled with an allowed claim by the Debtor, their claims will
      be disallowed.

4.    Claim:  A debt scheduled by the Debtor as liquidated, non-contingent, and undisputed, or
      a Proof of Claim filed before the applicable Bar Date, which is allowed pursuant to 11
      U.S.C. § 502.

5.    Chapter 11:  Chapters 11 of the Bankruptcy Code.

6.    Code.  The Bankruptcy Code (Title 11, United States Code).

7.    Confirmation:  Entry by the Court of an Order Confirming the Plan at or after a hearing
      pursuant to Sections 1127-1129 of the Bankruptcy Code.

8.    Confirmation Effective Date:  See "Effective Date," below.

9.    Court:  The United States Bankruptcy Court for the Western District of Texas, El Paso
      Division, including the United States Bankruptcy Judge presiding in the Chapter 11 case
      of the Debtor.

10.   Creditor:  The holder of an Allowed Claim in these proceedings.

11.   Debtor:  PTSI CONSTRUCTION, INC. ("PTSI").

12.   Effective Date of Plan.  The effective date of this Plan is the first business day following
      the date that is fourteen days after the entry of the order of confirmation.  If, however, a

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 43 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 37 of
114
120

stay of the confirmation order is in effect on that date, due to an appeal from order of confirmation, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

13. Fiscal Year: The Debtor operates on a calendar year which ends December 31st.

14. General Unsecured Claims: Claims that are without collateralization and not entitled to priority under 11 U.S.C. § 507.

15. IRS: The United States Internal Revenue Service.

16. Impaired: A class of claims is said to be impaired if members of the class will not be paid in full or restored to fully current contractual status as of confirmation effective date.

17. Insider: A person or entity closely related to the Debtor in business or family matters, within the definitional standards of 11 U.S.C. § 101(31).

18. Payment: Distribution by the Debtor of funds to creditors at the intervals and in the amounts proposed under the Plan.

19. Petition Date: April 17, 2020, the date of filing of the petition by the Debtor in these proceedings.

20. Plan: The Amended Plan of Reorganization, as Modified Prior to Confirmation Under 11 U.S.C. § 1193(a), filed by the Debtor on ____ October 23 ___, 2020, and as it may be afterwards amended or supplemented or modified as permitted by the Bankruptcy Code. The Plan may be modified or corrected prior to Confirmation upon application of the Debtor pursuant to Section 1127 of the Bankruptcy Code, if the modification does not materially and adversely change any claimholders' rights, or if claimholders who are materially and adversely affected accept the change after notice. The Plan can be modified after confirmation pursuant to 11 U.S.C. § 1127(b) or (f), after notice to all parties in interest and a hearing. The Plan in the case of a corporation, LLC, or limited partnership can be modified post-confirmation only if "substantial consummation" has not occurred yet, through payments made or property transferred.

21. Priority Claim: Any claim entitled to priority pursuant to Section 507 of the Bankruptcy Code.

22. Schedules: The lists of assets and liabilities filed by the Debtor in these Chapter 11 proceedings, as such lists may have been amended by the Debtor.

23. Secured Claim: Any claim secured by the property of the Debtor under a duly perfected security interest or statutory lien filed of record according to law, to the extent of the value of the collateral. Texas property tax claims do not fit this definition exactly and are separately defined below.

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 44 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 98 of
114

24. Secured Creditors: All creditors of the Debtor who hold a lien, security interest, or other encumbrance which has been properly perfected as required by law with respect to property owned by the Debtor.

25. Section: (Sometimes indicated by the symbol §). References to sections in the Bankruptcy Code, unless some other code or statute is specified.

26. Tax Claim: Any allowed claim filed by a governmental unit for taxes.

27. Texas Property Tax Claims: Claims and liens arising by operation of law each January 1 on property of the Debtor.

28. Unsecured Tax Penalty Claim: An uncollateralized claim for federal tax penalties, of the type that would have fourth priority of distribution in a Chapter 7 liquidation, behind the claims of general unsecured creditors.

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 45 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 39 of
114

EXHIBIT "2"

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 46 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 40 of
120
20-30522-hcm  Doc#16  Filed 04/30/20  Entered 04/30/20 12:39:23  Main Document  Pg 2 of
21

**Fill in this information to identify the case.**

Debtor name **PTSI Construction, Inc.**

United States Bankruptcy Court for the:  **WESTERN DISTRICT OF TEXAS**

Case number (if known)  **20-30522**

☐ Check if this is an
amended filing

## Official Form 206A/B

# Schedule A/B: Assets - Real and Personal Property  12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1.  Cash and cash equivalents

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor

Current value of
debtor's interest

3.  Checking, savings, money market, or financial brokerage accounts *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1.  JP Morgan Chase | Checking | 5502 | $0.00 |

4.  Other cash equivalents *(Identify all)*

5.  Total of Part 1.   $0.00

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

### Part 2.  Deposits and Prepayments

**6. Does the debtor have any deposits or prepayments?**

■ No. Go to Part 3.
☐ Yes Fill in the information below.

### Part 3.  Accounts receivable

**10. Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
■ Yes Fill in the information below.

11.  Accounts receivable

| 11a. 90 days old or less: | 18,886.31 | - | 0.00 = .... | $18,886.31 |
|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | |

**Debtor** PTSI Construction, Inc.
Name

Case number *(if known)* 20-30522

| | | | |
|---|---|---|---|
| 11a. 90 days old or less: | 3,650.00 | 0.00 = .... | $3,650.00 |
| | face amount | doubtful or uncollectible accounts | |

12. **Total of Part 3.**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

$22,536.31

**Part 4. Investments**

13. **Does the debtor own any investments?**

■ No. Go to Part 5.
☐ Yes Fill in the information below.

**Part 5. Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.
■ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| 20. **Work in progress** | | | | |
| 21. **Finished goods, including goods held for resale** | | | | |
| 22. **Other inventory or supplies** Inventory | | $0.00 | | $3,000.00 |

23. **Total of Part 5.**

Add lines 19 through 22. Copy the total to line 84.

$3,000.00

24. **Is any of the property listed in Part 5 perishable?**
■ No
☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
■ No
☐ Yes. Book value _____ Valuation method _____ Current Value _____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
■ No
☐ Yes

**Part 6. Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.
☐ Yes Fill in the information below.

**Part 7. Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

Official Form 206A/B Schedule A/B Assets - Real and Personal Property page 2

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com

Debtor    **PTSI Construction, Inc.**      Case number *(if known)* **20-30522**
Name

☐ No. Go to Part 8.

■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39.** Office furniture<br>**Office furniture** | $0.00 | | $2,000.00 |
| **40.** Office fixtures<br>**Books and paintings** | $0.00 | | $100.00 |
| **41.** Office equipment, including all computer equipment and communication systems equipment and software<br>**Office equipment** | $0.00 | | $400.00 |
| **42.** Collectibles *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| **43.** Total of Part 7.<br>Add lines 39 through 42. Copy the total to line 86. | | | $2,500.00 |

**44.** Is a depreciation schedule available for any of the property listed in Part 7?
   ■ No
   ☐ Yes

**45.** Has any of the property listed in Part 7 been appraised by a professional within the last year?
   ■ No
   ☐ Yes

**Part 8**    **Machinery, equipment, and vehicles**

**46.** Does the debtor own or lease any machinery, equipment, or vehicles?

☐ No. Go to Part 9.

■ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47.** Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles | | | |
| **48.** Watercraft, trailers, motors, and related accessories *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| **49.** Aircraft and accessories | | | |
| **50.** Other machinery, fixtures, and equipment (excluding farm machinery and equipment)<br>**Tools and equipment** | $0.00 | | $5,000.00 |

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 49 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 43 of
113
20-30522-hcm Doc#16 Filed 04/30/20 Entered 04/30/20 12:39:23 Main Document Pg 5 of
21

Debtor    **PTSI Construction, Inc.**                        Case number *(if known)* 20-30522
            Name

| | | |
|---|---|---|
| 51. | **Total of Part 8.** | **$5,000.00** |
| | Add lines 47 through 50. Copy the total to line 87. | |

52.   **Is a depreciation schedule available for any of the property listed in Part 8?**
     ■ No
     ☐ Yes

53.   **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
     ■ No
     ☐ Yes

**Part 9**    **Real property**

**54. Does the debtor own or lease any real property?**

   ■ No. Go to Part 10.
   ☐ Yes Fill in the information below.

**Part 10**    **Intangibles and intellectual property**

**59. Does the debtor have any interests in intangibles or intellectual property?**

   ■ No. Go to Part 11.
   ☐ Yes Fill in the information below.

**Part 11**    **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

   ☐ No. Go to Part 12.
   ■ Yes Fill in the information below.

                                                               **Current value of
debtor's interest**

71.   **Notes receivable**
     Description (include name of obligor)

72.   **Tax refunds and unused net operating losses (NOLs)**
     Description (for example, federal, state, local)

73.   **Interests in insurance policies or annuities**

74.   **Causes of action against third parties (whether or not a lawsuit
     has been filed)**

75.   **Other contingent and unliquidated claims or causes of action of
     every nature, including counterclaims of the debtor and rights to
     set off claims**

76.   **Trusts, equitable or future interests in property**

77.   **Other property of any kind not already listed** *Examples:* Season tickets,
     country club membership

     **Uniforms and protective gear**                                    **$200.00**

| | | |
|---|---|---|
| 78. | **Total of Part 11.** | **$200.00** |
| | Add lines 71 through 77. Copy the total to line 90. | |

79.   **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                   Best Case Bankruptcy

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 50 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 44 of
114
20-30522-hcm Doc#16 Filed 04/30/20 Entered 04/30/20 12:39:23 Main Document Pg 6 of
21

| Debtor | PTSI Construction, Inc. | Case number *(if known)* 20-30522 |
|--------|-------------------------|-----------------------------------|
| | Name | |

■ No
☐ Yes

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 51 of
120
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 45 of
20-30522-hcm  Doc#16  Filed 04/30/20  Entered 04/30/20 12:39:23  Main Document  Pg 7 of
21

Debtor   **PTSI Construction, Inc.**
Name

Case number *(if known)* **20-30522**

**Part 12:**    **Summary**

In Part 12 copy all of the totals from the earlier parts of the form
    **Type of property**

| | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $22,536.31 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $3,000.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $2,500.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $5,000.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*..............................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $200.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $33,236.31 | + 91b.   $0.00 |
| 92. **Total of all property on Schedule A/B. Add lines 91a+91b=92** | | $33,236.31 |

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 52 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 46 of
120
20-30522-hcm Doc#16 Filed 04/30/20 Entered 04/30/20 12:39:23 Main Document Pg 8 of
21

Fill in this information to identify the case:

Debtor name __PTSI Construction, Inc.__

United States Bankruptcy Court for the: __WESTERN DISTRICT OF TEXAS__

Case number (if known)   __20-30522__

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

1. Do any creditors have claims secured by debtor's property?

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.1** **City of El Paso**<br>Creditor's Name<br><br>c/o Linebarger Goggan<br>Blair & Sampson<br>112 E. Pecan Street, Ste. 2200<br>San Antonio, TX 78205<br>Creditor's mailing address | Describe debtor's property that is subject to a lien<br>**Furniture, machinery, vehicle**<br><br><br>Describe the lien | $63,151.56 | $10,700.00 |

Creditor's email address, if known

Is the creditor an insider or related party?
■ No
☐ Yes

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

Date debt was incurred

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.      $63,151.56

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

Fill in this information to identify the case:

Debtor name **PTSI Construction, Inc.**

United States Bankruptcy Court for the: **WESTERN DISTRICT OF TEXAS**

Case number (if known) **20-30522**

☐ Check if this is an amended filing

# Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

So as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:   List All Creditors with PRIORITY Unsecured Claims**

1. Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>**T&T Staff Management, Inc.**<br>**511 Executive Center Blvd.**<br>**El Paso, TX 79902** | As of the petition filing date, the claim is:<br>Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $0.00 | $0.00 |
|  | Date or dates debt was incurred | Basis for the claim: | | |
|  | Last 4 digits of account number | Is the claim subject to offset? | | |
|  | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No<br>☐ Yes | | |
| **2.2** | Priority creditor's name and mailing address<br>**Texas Comptroller**<br>**Revenue Accounting Div.-Bankr.**<br>**Section**<br>**P.O. Box 13528**<br>**Austin, TX 78711** | As of the petition filing date, the claim is:<br>Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $142,592.00 | $0.00 |
|  | Date or dates debt was incurred | Basis for the claim: | | |
|  | Last 4 digits of account number | Is the claim subject to offset? | | |
|  | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | ■ No<br>☐ Yes | | |

**Part 2:   List All Creditors with NONPRIORITY Unsecured Claims**

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 54 of
120
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 48 of
114
20-30522-hcm  Doc#16  Filed 04/30/20  Entered 04/30/20 12:39:23  Main Document  Pg 10 of
21

| Debtor | PTSI Construction, Inc. | Case number (if known) | 20-30522 |

| | Name | | |

| **3.1** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,200.00 |
| | **BC Landscaping, LLC** | ☐ Contingent | |
| | **301 Lafayette** | ☐ Unliquidated | |
| | **El Paso, TX 79915** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| **3.2** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $300.00 |
| | **CED Electrical Supply** | ☐ Contingent | |
| | **11500 Rojas** | ☐ Unliquidated | |
| | **El Paso, TX 79936** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| **3.3** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $0.00 |
| | **Internal Revenue Service** | ☐ Contingent | |
| | **Centralized Insolvency Office** | ☐ Unliquidated | |
| | **P.O. Box 7346** | ☐ Disputed | |
| | **Philadelphia, PA 19101-7346** | Basis for the claim: **Notice only** | |
| | Date(s) debt was incurred _ | Is the claim subject to offset? ■ No ☐ Yes | |
| | Last 4 digits of account number _ | | |

| **3.4** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $0.00 |
| | **IRS Insolvency Office** | ☐ Contingent | |
| | **300 E. 8th Street, Mail Stop 5026AUS** | ☐ Unliquidated | |
| | **Austin, TX 78701** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: **Duplicate address** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| **3.5** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $800.00 |
| | **Phil's Plumbing Shop** | ☐ Contingent | |
| | **7361 N Loop** | ☐ Unliquidated | |
| | **El Paso, TX 79915** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| **3.6** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,000.00 |
| | **Sun City Winnelson** | ☐ Contingent | |
| | **7179 Copper Queen** | ☐ Unliquidated | |
| | **El Paso, TX 79915** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| **3.7** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $0.00 |
| | **United States Attorney** | | |
| | **Civil Process Clerk-** | ☐ Contingent | |
| | **Internal Revenue Service** | ☐ Unliquidated | |
| | **601 N.W. Loop 410, Suite 600** | ☐ Disputed | |
| | **San Antonio, TX 78216** | Basis for the claim: **Notice only** | |
| | Date(s) debt was incurred _ | Is the claim subject to offset? ■ No ☐ Yes | |
| | Last 4 digits of account number _ | | |

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 55 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 49 of
120
20-30522-hcm  Doc#16  Filed 04/30/20  Entered 04/30/20 12:39:23  Main Document  Pg 11 of
21

| Debtor | PTSI Construction, Inc. | | Case number (if known) | 20-30522 | |
|--------|------------------------|--|------------------------|----------|--|
| | Name | | | | |

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $0.00 |
|-----|-----|-----|-----|

**United States Attorney General**
**Department of Justice**
**950 Pennsylvania Avenue, N.W.**
**Washington, DC 20530**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __Notice only__

Is the claim subject to offset? ■ No  ☐ Yes

---

**Part 3:  List Others to Be Notified About Unsecured Claims**

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|--------------------------|--------------------------------------------------------------------------|------------------------------------------|

**Part 4:  Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|--|--|--|
| 5a. Total claims from Part 1 | 5a. $ | 142,592.00 |
| 5b. Total claims from Part 2 | 5b. + $ | 4,300.00 |
| 5c. Total of Parts 1 and 2 Lines 5a + 5b = 5c. | 5c. $ | 146,892.00 |

20-30522-hcm   Doc#66   Filed 11/06/20   Entered 11/06/20 13:46:50   Main Document   Pg 56 of
20-30522-hcm   Doc#56   Filed 10/23/20   Entered 10/23/20 12:47:09   Main Document   Pg 50 of
114

# EXHIBIT "3"

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 57 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 51 of
120
114

# LIQUIDATION VALUE
# APPRAISAL

## Truck, Trailer, Tools

### PTSI CONSTRUCTION, INC.
### 7349 NORTH LOOP
### EL PASO, TEXAS

#### AS OF:

#### JANUARY 9, 2018

#### PREPARED FOR:

**James Cicchetti**
**PTSI Construction, Inc.**
**7349 North Loop**
**El Paso, Texas**

**FRED G. EVANS**
**Appraiser**

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 58 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 52 of
114

# TABLE OF CONTENTS

Page

Letter of Transmittal.......................................................................... 3

Terms & Conditions of Appraisal ...................................................... 4

Listing of Property ............................................................................ 8

Total Appraised Value....................................................................... 21

Certification ...................................................................................... 22

Appraiser Qualifications ................................................................... 23

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 59 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 53 of
114

PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
JANUARY 9, 2018

under current economic conditions.

## VALUATION LIMITATIONS

Values are given for individual items unless stated otherwise.  Where items are
grouped for valuation, the value is for the group only.  Values for individual items
in a group are not implied.

## LIMITATION OF LIABILITIES

This appraisal report has been completed in the best judgment and opinion of
the Appraiser, and the Appraiser considers values stated to be fair and
appropriate for and only for the purpose stated in the report.  The values
expressed are not a representation or warranty express or implied that the items
will realize those values if offered for sale at a tag sale, public auction or other
method.  The values expressed are not a price list and should not be used as
such.  The values expressed are as of the effective date of the appraisal and no
opinion is expressed as to past or possible future values unless specifically so
stated.

The Appraiser, by reason of this appraisal report, shall not be required to give
further consultation, testimony, or be in attendance in court with reference to the
property or properties in this report, unless arrangements have been previously
made therefore.  Any preparation, review, consultation, attendance or testimony
shall constitute future services to be paid for by the commissioning client at the
Appraiser's then current rate.

The Appraiser disclaims any liability arising from the use of the value or values
shown herein.  However, if the Appraiser is found to be liable by a court of law,
such liability shall be limited to the amount of the appraisal fee.

The Appraiser does not assume responsibility for information provided by others
and reasonably relied upon by the Appraiser in determining value.  Such
information includes but is not limited to matters of provenance, quantities, etc.
furnished by the client or others, or information published in price lists, auction
sale results, etc..

## TITLE

This appraisal in no way concerns itself with the title or ownership of the
appraised items.  For valuation purposes, it is assumed that whole ownership
and interest-of-possession exist, unencumbered by any liens, fractional interests,

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 60 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 54 of
114

PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
JANUARY 9, 2018

Obsolescence.    However, some of the inventory items and certain tools are
affected by Obsolescence.

## ENVIRONMENTAL PROTECTION ACT

Certain pieces of equipment may contain lubricants, refrigerants, or chemical
residues that may require special treatment for disposal.  This report makes no
assumptions regarding lubricants, refrigerants or other products subject to EPA
or other regulations.   Therefore, values in this report make no allowances for
particular disposal problems or costs or other conditions impacted by EPA or
other regulations, that may, were their full extent known, affect values.

## OBJECTIVITY

The Appraiser has no current or contemplated future financial interest in the
items appraised and has no personal interest or bias with respect to the parties
involved. The Appraiser's compensation is not contingent on an action or event
resulting from the analyses, opinions, or conclusions in, or the use of, this report.

## CONFIDENTIALITY AND RESTRICTED USE

This appraisal report and the information contained herein are for the benefit of
the client commissioning and paying for the appraisal.  Possession of this report
does not carry with it the right of publication, nor may the same be used for any
purpose by anyone but the above named client without the previous written
consent of the Appraiser, and in any event, only in its entirety and with the proper
qualifications and cover letter.   No change in any piece of the appraisal report
shall be made by anyone other than the Appraiser and the Appraiser shall have
no responsibility for any such unauthorized change.  All research is the sole
property of the Appraiser with the right of publication.  Neither all, nor any part of
the contents of this report (especially any conclusions as to the value of the
property or properties, or the identity of the Appraiser) shall be disseminated to
the public through advertising, public relations, news, sales, or other media,
without prior written consent and approval of the Appraiser.

In order to maintain the confidentiality of this report and the information
contained herein, the Appraiser will not furnish copies of this report nor
information contained herein to any party without the written permission of the
commissioning client.

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 61 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document   Pg 55 of
114

PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
JANUARY 9, 2018

# LISTING OF PROPERTY

REF #     ITEM                    DESCRIPTION                           VALUE



PHOTO #1



PHOTO #2

1   Van          2007 Chevrolet Express Cargo.           3,200.00
                  TX HWE 9763.
                  VIN 1GCHG30U471132432.
                  Automatic transmission, long
                  wheelbase, rack. Odometer
                  247,731. "Clean" condition.

*Evans*
Appraiser

Page 8 of 24

## PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

| REF # | ITEM | DESCRIPTION | VALUE |
|---|---|---|---|



PHOTO #3



PHOTO #4

| 2 | Utility Trailer | 2003 PJ tandem axle, 14 ft. VIN 4P5UT142232031775 according to title (not visible on trailer). Wooden bed rough, damage to left fender. | 750.00 |



PHOTO #5

_F. Evans_
Appraiser

Page 9 of 24

## PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

| REF # | ITEM | DESCRIPTION | VALUE |
|---|---|---|---|



PHOTO #9

PHOTO #10

3  Contents  Storage trailer #1. Unscheduled new and used conduit fittings, used circuit breakers, etc. Lot.    500.00

PHOTO #11

Evans
Appraiser

Page 11 of 24

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 64 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 59 of
114

## PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

| REF # | ITEM | DESCRIPTION | VALUE |
|---|---|---|---|



PHOTO #12



PHOTO #13



PHOTO #14

4  Contents    Storage trailer #2. Unscheduled,    300.00
small lots of ceramic tile, grout,
ceiling T bars, scaffold parts. Lot.

_Evans_
**Appraiser**

**Page 12 of 24**

## PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

| REF # | ITEM | DESCRIPTION | VALUE |
|---|---|---|---|



**PHOTO #16**

| 5 | Portable Compressor | DeWalt, with small horizontal storage tank. 5 CFM, 200 psi. | 45.00 |

**PHOTO #17**

| 6 | Portable Compressor | Porter Cable pancake. | 30.00 |

**PHOTO #18**

*L. Evans*
Appraiser

Page 13 of 24

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 66 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 61 of
120
114

## PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

| REF # | ITEM | DESCRIPTION | VALUE |
|-------|------|-------------|-------|
| 7 | Miscellaneous | Unscheduled Ridgid extraction blower, shop vacuum. | 25.00 |



PHOTO #19

| 8 | Table Saw | De Walt portable, with stand. | 75.00 |



PHOTO #20

| 9 | Tile Saw | Ridgid. | 100.00 |
| 10 | Tile Saw | QEP. | 25.00 |
| 11 | Jack | Mechanical, wire reels. | 25.00 |



Appraiser

Page 14 of 24

## PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

| REF # | ITEM | DESCRIPTION | VALUE |
|---|---|---|---|
| | | **PHOTO #21** | |
| 12 | Chop Saw | DeWalt, 14". | 50.00 |
| 13 | Miscellaneous | Unscheduled, Athol vise, 6" bench grinder, Makita circular saw, etc. | 75.00 |



| | | **PHOTO #22** | |
|---|---|---|---|
| 14 | Pipe Dies | Nine pieces. | 40.00 |
| 15 | Work Surfaces | Portable saw table, drywall bench, small scaffold. | 65.00 |



| | | **PHOTO #23** | |
|---|---|---|---|
| 16 | Chop Saw | Ridgid. | 40.00 |
| 17 | Hammer Drill | Bosch RH540M. No bits. | 100.00 |
| 18 | Gang Box | For 686 Greenlee cable puller. Box only. | 100.00 |
| 19 | Welding Equipment | Radnor oxy-acetylene. Torch with cutting and welding tips, hose, regulators, cart. Does not include cylinders. | 85.00 |

A. Evans
Appraiser

Page 15 of 24

## PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

| REF # | ITEM | DESCRIPTION | VALUE |
|---|---|---|---|



PHOTO #24

| 20 | Hammer Drill | Makita. Not working per owner. | 0.00 |
| 21 | Miscellaneous | Unscheduled small items including chains, lights, shop vacuum, etc. Lot. | 60.00 |



PHOTO #25

| 22 | Bolt Bin | Carousel, 8 tiers. | 125.00 |

*J. Evans*
Appraiser

### PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

| REF # | ITEM | DESCRIPTION | VALUE |
|-------|------|-------------|-------|



PHOTO #26



PHOTO #27



PHOTO #28

| REF # | ITEM | DESCRIPTION | VALUE |
|-------|------|-------------|-------|
| 23 | Miscellaneous Tools | Unscheduled including garden tools, scraper, sledge hammers, fan, compound threading dies (2, one rusty), one working small chain saw, etc. Lot. | 100.00 |

*J. Evans*

Appraiser

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 70 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 65 of
114

**PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.**
**JANUARY 9, 2018**

| REF # | ITEM | DESCRIPTION | VALUE |
|---|---|---|---|
| | | **PHOTO #30** | |
| 30 | Ladders | Extension and step styles, various lengths from 6' to 14', fiberglass. Show signs of hard use and weathering. Lot of 15 pieces. | 400.00 |



| | | **PHOTO #31** | |
|---|---|---|---|
| 31 | Gang Box | JobBox. 3' x 3' x 6'. | 100.00 |
| 32 | Miscellaneous | Unscheduled portable power tools including incomplete sprayer, router, finish nailer, assorted wrenches. Lot. | 75.00 |

Evans
Appraiser

## PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

| REF # | ITEM | DESCRIPTION | VALUE |
|-------|------|-------------|-------|
| 39 | Concrete Mixer | Small electric. | 40.00 |
| 40 | Generator | Enduro 7500 watt. Leaking gas tank. As is. | 40.00 |
| 41 | Pipe Vise | With stand. | 50.00 |



**PHOTO #34**

| | | | |
|---|---|---|---|
| 42 | Miscellaneous | Unscheduled building materials including ceramic tile, etc. Lot. | 50.00 |
| * | NOTE: | ALL ITEMS SHOW HEAVY COMMERCIAL USE. | |
| | | **Total Appraised Value** | **$7,490.00** |

Appraiser

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 72 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 67 of
114

### PERSONAL PROPERTY OF PSTI CONSTRUCTION, INC.
### JANUARY 9, 2018

LIQUIDATOR by tag sale, public auction and private treaty of the following types of personal property for estates and businesses for over 30 years.

- Household furnishings, antiques, collectibles, fine art.

- Automobiles, heavy trucks, construction and machine shop equipment, restaurant equipment, auto repair facilities, office furnishings and equipment, motor homes and trailers, photographic and electronic equipment, hotel furnishings and supplies, medical equipment, food stores, clothing and specialty shops, and many other classes of personal property.

EXPERT WITNESS testimony in State District and U. S. Bankruptcy Courts.

Page 24 of 24

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 73 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 68 of
120
114

# EXHIBIT "4"

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 74 of
120
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 70 of
20-30522-hcm  Doc#29  Filed 06/24/20  Entered 06/24/20 15:10:42  Main Document  Pg 2 of
11

Page 2

B 25C (Official Form 25C) (12/08)

14. HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH?     ☐  ☑

15. DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH?     ☐  ☑

16. HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH?     ☐  ☑

17. HAS ANYONE MADE AN INVESTMENT IN YOUR BUSINESS THIS MONTH?     ☐  ☑

18. HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY?     ☐  ☑

## TAXES

DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX     ☐  ☑
OBLIGATIONS?

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL
BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR
THE PAYMENT.

*(Exhibit A)*

## INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH. THE LIST
SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. *(THE U.S. TRUSTEE
MAY WAIVE THIS REQUIREMENT.)*

TOTAL INCOME  $ 35,036.31

### SUMMARY OF CASH ON HAND

Cash on Hand at Start of Month     $ 0.00

Cash on Hand at End of Month     $ 18,864.41

PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU   TOTAL  $ 18,864.41

*(Exhibit B)*

## EXPENSES

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK
ACCOUNTS THIS MONTH. INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE
PURPOSE AND THE AMOUNT. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

TOTAL EXPENSES  $ 16,171.90

*(Exhibit C)*

## CASH PROFIT

INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)*     $ 35,036.31

EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)*     $ 16,171.90

*(Subtract Line C from Line B)*   CASH PROFIT FOR THE MONTH   $ 18,864.41

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 75 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 71 of
110
20-30522-hcm Doc#29 Filed 06/24/20 Entered 06/24/20 15:10:42 Main Document Pg 3 of
11

Page 3

B 25C (Official Form 25C) (12/08)

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED
SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID. THE LIST MUST INCLUDE
THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE
DEBT AND WHEN THE DEBT IS DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

**TOTAL PAYABLES** $ _n/a_

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK
YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD. YOU SHOULD INCLUDE WHO
OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE. *(THE U.S. TRUSTEE MAY
WAIVE THIS REQUIREMENT.)*

**TOTAL RECEIVABLES** $

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU
HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED
BY THIS REPORT.

*(Exhibit F)*

## EMPLOYEES

NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED?

NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT?        1

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING
PERIOD?                                                                         $ _____

TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING
OF THE CASE?                                                                    $ 5,000

*NON-BANKRUPTCY RELATED:*

PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS
REPORTING PERIOD?                                                               $ _____

TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID SINCE THE
FILING OF THE CASE?                                                             $ _____

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 76 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 72 of
120
20-30522-hcm  Doc#29  Filed 06/24/20  Entered 06/24/20 15:10:42  Main Document  Pg 4 of
11

2:30 PM
06/18/20

**P.T.S.I. Construction, Inc.**
**Profit & Loss**
April 17 through May 31, 2020

|  | Apr 17 - May 31, 20 | % of Income |
|---|---|---|
| **Ordinary Income/Expense** | | |
| Income | | |
| Income | 34,359.75 | 100.0% |
| **Total Income** | 34,359.75 | 100.0% |
| **Cost of Goods Sold** | | |
| **Cost of Goods Sold** | | |
| Materials | 6,641.44 | 19.3% |
| Subcontractor | 3,675.44 | 10.7% |
| **Total Cost of Goods Sold** | 10,316.88 | 30.0% |
| **Total COGS** | 10,316.88 | 30.0% |
| **Gross Profit** | 24,042.87 | 70.0% |
| **Expense** | | |
| Equipment Rental | 681.14 | 2.0% |
| Insurance | 1,339.02 | 3.9% |
| **Payroll Expenses** | | |
| T&T | 3,535.67 | 10.3% |
| **Total Payroll Expenses** | 3,535.67 | 10.3% |
| Subcontractors | 700.00 | 2.0% |
| Telephone | 197.46 | 0.6% |
| Utilities | 364.04 | 1.1% |
| **Total Expense** | 6,817.33 | 19.8% |
| **Net Ordinary Income** | 17,225.54 | 50.1% |
| **Net Income** | 17,225.54 | 50.1% |

20-30522-hcm Doc#66 Filed 11/06/29 Entered 11/06/29 13:46:50 Main Document Pg 77 of
20-30522-hcm Doc#29 Filed 08/24/20 Entered 08/24/20 15:10:42 Main Document Pg 5 of
120

9:28 AM
06/19/20

P.T.S.I. Construction, Inc.
**Transactions by Account**
As of May 31, 2020

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Western Heritage-Operating | | | | | | | 0.00 |
| Deposit | 04/29/20 | | Farmers | Income | 3,660.00 | | 3,650.00 |
| Check | 05/06/20 | | | Subcontractors | | 700.00 | 2,950.00 |
| Check | 05/11/20 | | American Express | Materials | | 2,002.81 | 947.19 |
| Deposit | 05/11/20 | | Farmers Dairy | Income | 12,500.00 | | 13,447.19 |
| Deposit | 05/15/20 | | Taco-Te | Income | 18,209.75 | | 31,656.94 |
| Check | 05/15/20 | | Texas Gas Service | Utilities | | 29.79 | 31,627.15 |
| Check | 05/15/20 | | Otero County Electric Coope... | Utilities | | 68.02 | 31,559.13 |
| Check | 05/15/20 | | AT&T | Telephone | | 197.46 | 31,361.67 |
| Check | 05/15/20 | 1002 | Daniel Samaniego | Subcontractor | | 900.00 | 30,461.67 |
| Check | 05/15/20 | 1003 | James A Cicchetti | Distribution to Shareholders | | 900.00 | 29,561.67 |
| Check | 05/15/20 | | EP Electric | Utilities | | 62.79 | 29,498.88 |
| Check | 05/18/20 | | EP Electric | Utilities | | 77.56 | 29,421.30 |
| Check | 05/18/20 | | El Paso Water Utilities | Utilities | | 125.86 | 29,295.44 |
| Check | 05/18/20 | | Air Gas | Subcontractor | 676.56 | | 29,972.00 |
| Deposit | 05/19/20 | | Sun Garage Door | Subcontractor | | 1,800.00 | 28,172.00 |
| Check | 05/21/20 | 1004 | State Farm | Insurance | | 1,339.02 | 26,832.98 |
| Check | 05/22/20 | | GECU | Distribution to Shareholders | | 593.80 | 26,239.18 |
| Check | 05/28/20 | 1005 | Alliance Glass | Materials | | 4,638.63 | 21,597.55 |
| Check | 05/25/20 | 1007 | Daniel Reyes | Subcontractor | | 252.00 | 21,345.55 |
| Check | 05/26/20 | 1008 | Daniel Samaniego | Subcontractor | | 900.00 | 20,445.55 |
| Check | 05/26/20 | 1009 | James A Cicchetti | Distribution to Shareholders | | 900.00 | 19,545.55 |
| Check | 05/28/20 | 1010 | Chase | Equipment Rental | | 681.14 | 18,864.41 |
| Check | 05/29/20 | 1006 | | | | | 18,864.41 |
| | | | | | 35,036.31 | 16,171.90 | 18,864.41 |
| Total Western Heritage-Operating | | | | | 35,036.31 | 16,171.90 | 18,864.41 |
| **TOTAL** | | | | | 35,036.31 | 16,171.90 | 18,864.41 |

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 78 of
20-30522-hcm Doc#29 Filed 08/24/20 Entered 08/24/20 15:10:42 Main Document Pg 6 of
120

8:58 AM
08/18/20

P.T.B.I. Construction, Inc.
**Transactions by Account**
As of May 31, 2020

| Type | Date | Name | Split | Debit | Credit | Balance |
|------|------|------|-------|-------|--------|---------|
| | | | | | | 0.00 |
| Western Heritage- PPP (1662) | | | | | | |
| Transfer | 05/07/20 | | N/P Western Heritage (PPP Loan) | 17,743.00 | | 17,743.00 |
| Check | 05/08/20 | James A Ciochatti | Distribution to Shareholders | | 500.00 | 17,243.00 |
| Check | 05/11/20 | Daniel Samaniego | Subcontractor | | 500.00 | 16,743.00 |
| Check | 05/21/20 | T&T Staff Inc. | T&T | | 1,980.46 | 14,762.54 |
| Check | 05/27/20 | T&T Staff Inc. | T&T | | 1,555.21 | 13,207.33 |
| | | | | 17,743.00 | 4,535.67 | 13,207.33 |
| Total Western Heritage- PPP (1662) | | | | | | |
| TOTAL | | | | 17,743.00 | 4,535.67 | 13,207.33 |

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 79 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 75 of
120
20-30522-hcm  Doc#29  Filed 06/24/20  Entered 06/24/20 15:10:42  Main Document  Pg 7 of
11

PTSI
Cash Flow Projection
For June, July & Aug 2020

| | June | July | August | Total |
|---|---|---|---|---|
| **Contract Name:** | | | | |
| LRS Federal | 13,800 | 20,000 | 20,000 | 53,800 |
| Air Gas | - | 4,963 | - | 4,963 |
| Farmers Select | 1,818 | - | - | 1,818 |
| Phil's Plumbing | - | 977 | - | 977 |
| WB Liquors | 13,900 | 18,000 | 18,000 | 49,900 |
| TA Travel Center | - | 81,000 | 81,000 | 162,000 |
| Total Income | 29,518 | 124,940 | 119,000 | 273,458 |
| | | | | |
| **Cost of Goods Sold:** | | | | |
| Material & subcontractors | 14,760 | 62,470 | 59,500 | 136,730 |
| Labor | 10,000 | 50,000 | 48,000 | 108,000 |
| | 24,760 | 112,470 | 107,500 | 244,730 |
| Gross Profit | 4,758 | 12,470 | 11,500 | 28,728 |
| | 16% | 10% | 10% | 11% |
| **Expenses:** | | | | |
| Auto Expenses | 2,000 | 2,000 | 2,000 | 6,000 |
| Insurance | 1,000 | 1,000 | 1,000 | 3,000 |
| Professional fees | 5,000 | 5,000 | 5,000 | 15,000 |
| Taxes, miscellaneous | 625 | 800 | 800 | 2,225 |
| Telephone | 250 | 250 | 250 | 750 |
| Travel | 2,000 | 2,500 | 2,000 | 6,500 |
| Utilities | 250 | 250 | 250 | 750 |
| | 11,125 | 11,800 | 11,300 | 34,225 |
| | | | | |
| Increase from operations | (6,367) | 670 | 200 | (5,497) |
| Distribution to shareholders | (3,600) | (4,500) | (3,600) | (11,700) |
| Cash increase (decrease) | (9,967) | (3,830) | (3,400) | (17,197) |
| | | | | |
| Beginning Cash | 32,072 | 22,105 | 18,275 | 32,072 |
| | | | | |
| Ending cash | 22,105 | 18,275 | 14,875 | 14,875 |

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 80 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 76 of
120

20-30522-hcm Doc#37 Filed 08/24/20 Entered 08/24/20 15:35:47 Main Document Pg 1 of 5

B 25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT

### Western District of Texas

Is re  PTSI Construction Inc

Debtor

Case No.  20-30522

Small Business Case under Chapter 11

## SMALL BUSINESS MONTHLY OPERATING REPORT

Month:  June 2020

Line of Business:  Construction

Date filed:

NAISC Code:  235310

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING SMALL BUSINESS MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.

RESPONSIBLE PARTY:

_____
Original Signature of Responsible Party

Jim Clechasi
_____
Printed Name of Responsible Party

Questionnaire: (All questions to be answered on behalf of the debtor.)

| | | Yes | No |
|---|---|---|---|
| 1. | IS THE BUSINESS STILL OPERATING? | ☒ | ☐ |
| 2. | HAVE YOU PAID ALL YOUR BILLS ON TIME THIS MONTH? | ☒ | ☐ |
| 3. | DID YOU PAY YOUR EMPLOYEES ON TIME? | ☒ | ☐ |
| 4. | HAVE YOU DEPOSITED ALL THE RECEIPTS FOR YOUR BUSINESS INTO THE DIP ACCOUNT THIS MONTH? | ☒ | ☐ |
| 5. | HAVE YOU FILED ALL OF YOUR TAX RETURNS AND PAID ALL OF YOUR TAXES THIS MONTH | ☒ | ☐ |
| 6. | HAVE YOU TIMELY FILED ALL OTHER REQUIRED GOVERNMENT FILINGS? | ☒ | ☐ |
| 7. | HAVE YOU PAID ALL OF YOUR INSURANCE PREMIUMS THIS MONTH? | ☒ | ☐ |
| 8. | DO YOU PLAN TO CONTINUE TO OPERATE THE BUSINESS NEXT MONTH? | ☒ | ☐ |
| 9. | ARE YOU CURRENT ON YOUR QUARTERLY FEE PAYMENT TO THE U.S. TRUSTEE? | ☒ | ☐ |
| 10. | HAVE YOU PAID ANYTHING TO YOUR ATTORNEY OR OTHER PROFESSIONALS THIS MONTH? | ☐ | ☒ |
| 11. | DID YOU HAVE ANY UNUSUAL OR SIGNIFICANT UNANTICIPATED EXPENSES THIS MONTH? | ☐ | ☒ |
| 12. | HAS THE BUSINESS SOLD ANY GOODS OR PROVIDED SERVICES OR TRANSFERRED ANY ASSETS TO ANY BUSINESS RELATED TO THE DIP IN ANY WAY? | ☐ | ☒ |
| 13. | DO YOU HAVE ANY BANK ACCOUNTS OPEN OTHER THAN THE DIP ACCOUNT? | ☐ | ☒ |

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 81 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 77 of
120
20-30522-hcm  Doc#37  Filed 08/24/20  Entered 08/24/20 15:35:47  Main Document  Pg 2 of 5

Page 2

B 25C (Official Form 25C) (12/08)

| | | | |
|---|---|---|---|
| 14. | HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH? | ☐ | ☑ |
| 15. | DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH? | ☐ | ☑ |
| 16. | HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH? | ☑ | ☐ |
| 17. | HAS ANYONE MADE AN INVESTMENT IN YOUR BUSINESS THIS MONTH? | ☐ | ☑ |
| 18. | HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY? | ☐ | ☑ |

## TAXES

DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX
OBLIGATIONS?   ☐   ☑

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL
BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR
THE PAYMENT.

*(Exhibit A)*

## INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH.  THE LIST
SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. *(THE U.S. TRUSTEE
MAY WAIVE THIS REQUIREMENT.)*

|  |  |  |
|---|---|---|
| **TOTAL INCOME** | $ | 3,353.72 |
| **SUMMARY OF CASH ON HAND** | | |
| Cash on Hand at Start of Month | $ | 32,041.74 |
| Cash on Hand at End of Month | $ | 80,877.90 |
| PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU   **TOTAL** | $ | 80,877.90 |

*(Exhibit B)*

## EXPENSES

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK
ACCOUNTS THIS MONTH.  INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE
PURPOSE AND THE AMOUNT. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

|  |  |  |
|---|---|---|
| **TOTAL EXPENSES** | $ | 33,977.29 |

*(Exhibit C)*

## CASH PROFIT

| | | |
|---|---|---|
| INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)* | $ | 3,353.72 |
| EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)* | $ | 33,977.29 |
| *(Subtract Line C from Line B)*   **CASH PROFIT FOR THE MONTH** | $ | -30,623.57 |

Page 3

B 25C (Official Form 25C) (12/08)

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED
SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID. THE LIST MUST INCLUDE
THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE
DEBT AND WHEN THE DEBT IS DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

|  | | |
|---|---|---|
| **TOTAL PAYABLES** | **$** | 0.00 |

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK
YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD. YOU SHOULD INCLUDE WHO
OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE. *(THE U.S. TRUSTEE MAY
WAIVE THIS REQUIREMENT.)*

|  | | |
|---|---|---|
| **TOTAL RECEIVABLES** | **$** | 0.00 |

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU
HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED
BY THIS REPORT.

*(Exhibit F)*

## EMPLOYEES

| | |
|---|---|
| NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED? | 3 |
| NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT? | 3 |

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

| | | |
|---|---|---|
| PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING PERIOD? | $ | 0.00 |
| TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING OF THE CASE? | $ | 5,000.00 |

*NON-BANKRUPTCY RELATED:*

| | | |
|---|---|---|
| PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING PERIOD? | $ | 0.00 |
| TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING OF THE CASE? | $ | 0.00 |

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 83 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 79 of
114
20-30522-hcm  Doc#37  Filed 08/24/20  Entered 08/24/20 15:35:47  Main Document  Pg 4 of 5

Page 4

B 25C (Official Form 25C) (12/08)

## PROJECTIONS

**COMPARE YOUR ACTUAL INCOME AND EXPENSES TO THE PROJECTIONS FOR THE FIRST 180
DAYS OF YOUR CASE PROVIDED AT THE INITIAL DEBTOR INTERVIEW.**

|  | Projected | Actual | Difference |
|---|---|---|---|
| INCOME | $ 29,518.00 | $ 3,353.72 | $ -26,164.28 |
| EXPENSES | $ 35,885.00 | $ 33,977.29 | $ -1,907.71 |
| CASH PROFIT | $ -6,367.00 | $ -30,623.57 | $ -24,256.57 |

| | | |
|---|---|---|
| **TOTAL PROJECTED INCOME FOR THE NEXT MONTH:** | $ | 124,940.00 |
| **TOTAL PROJECTED EXPENSES FOR THE NEXT MONTH:** | $ | 124,270.00 |
| **TOTAL PROJECTED CASH PROFIT FOR THE NEXT MONTH:** | $ | 670.00 |

## ADDITIONAL INFORMATION

**PLEASE ATTACH ALL FINANCIAL REPORTS INCLUDING AN INCOME STATEMENT AND BALANCE SHEET
WHICH YOU PREPARE INTERNALLY.**

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 84 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 80 of
114
20-30522-hcm  Doc#38  Filed 08/24/20  Entered 08/24/20 15:38:00  Main Document  Pg 1 of 6

B 25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT

### Western District of Texas

In re  PTSI Construction Inc               .              Case No.  20-30522
Debtor

Small Business Case under Chapter 11

## SMALL BUSINESS MONTHLY OPERATING REPORT

Month:  July 2020                              Date filed:

Line of Business:  Construction                NAISC Code:  235310

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING SMALL BUSINESS MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.

RESPONSIBLE PARTY:

_____
Original Signature of Responsible Party

Jim Clochett
_____
Printed Name of Responsible Party

| Questionnaire: (All questions to be answered on behalf of the debtor.) | Yes | No |
|---|---|---|
| 1. IS THE BUSINESS STILL OPERATING? | ☑ | ☐ |
| 2. HAVE YOU PAID ALL YOUR BILLS ON TIME THIS MONTH? | ☑ | ☐ |
| 3. DID YOU PAY YOUR EMPLOYEES ON TIME? | ☑ | ☐ |
| 4. HAVE YOU DEPOSITED ALL THE RECEIPTS FOR YOUR BUSINESS INTO THE DIP ACCOUNT THIS MONTH? | ☑ | ☐ |
| 5. HAVE YOU FILED ALL OF YOUR TAX RETURNS AND PAID ALL OF YOUR TAXES THIS MONTH | ☑ | ☐ |
| 6. HAVE YOU TIMELY FILED ALL OTHER REQUIRED GOVERNMENT FILINGS? | ☑ | ☐ |
| 7. HAVE YOU PAID ALL OF YOUR INSURANCE PREMIUMS THIS MONTH? | ☑ | ☐ |
| 8. DO YOU PLAN TO CONTINUE TO OPERATE THE BUSINESS NEXT MONTH? | ☑ | ☐ |
| 9. ARE YOU CURRENT ON YOUR QUARTERLY FEE PAYMENT TO THE U.S. TRUSTEE? | ☑ | ☐ |
| 10. HAVE YOU PAID ANYTHING TO YOUR ATTORNEY OR OTHER PROFESSIONALS THIS MONTH? | ☐ | ☑ |
| 11. DID YOU HAVE ANY UNUSUAL OR SIGNIFICANT UNANTICIPATED EXPENSES THIS MONTH? | ☐ | ☑ |
| 12. HAS THE BUSINESS SOLD ANY GOODS OR PROVIDED SERVICES OR TRANSFERRED ANY ASSETS TO ANY BUSINESS RELATED TO THE DIP IN ANY WAY? | ☐ | ☑ |
| 13. DO YOU HAVE ANY BANK ACCOUNTS OPEN OTHER THAN THE DIP ACCOUNT? | ☐ | ☑ |

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 85 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 81 of
20-30522-hcm  Doc#38  Filed 08/24/20  Entered 08/24/20 15:38:00  Main Document  Pg 2 of 6

Page 2

B 25C (Official Form 25C) (12/08)

| | | |
|---|---|---|
| 14. HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH? | ☐ | ☑ |
| 15. DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH? | ☐ | ☑ |
| 16. HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH? | ☐ | ☑ |
| 17. HAS ANYONE MADE AN INVESTMENT IN YOUR BUSINESS THIS MONTH? | ☐ | ☑ |
| 18. HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY? | ☐ | ☑ |

## TAXES

DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX OBLIGATIONS?  ☐  ☑

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR THE PAYMENT.

*(Exhibit A)*

## INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH. THE LIST SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

| | | |
|---|---|---|
| **TOTAL INCOME** | $ | 131,187.16 |
| **SUMMARY OF CASH ON HAND** | | |
| Cash on Hand at Start of Month | $ | 80,877.90 |
| Cash on Hand at End of Month | $ | 122,700.87 |
| PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU  **TOTAL** | $ | 122,700.87 |

*(Exhibit B)*

## EXPENSES

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK ACCOUNTS THIS MONTH. INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE PURPOSE AND THE AMOUNT. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

**TOTAL EXPENSES** $ _____

*(Exhibit C)*

## CASH PROFIT

| | | |
|---|---|---|
| INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)* | $ | 131,187.16 |
| EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)* | $ | 91,068.94 |
| *(Subtract Line C from Line B)*  **CASH PROFIT FOR THE MONTH** | $ | 40,118.22 |

Page 3

B 25C (Official Form 25C) (12/08)

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID. THE LIST MUST INCLUDE THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE DEBT AND WHEN THE DEBT IS DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

**TOTAL PAYABLES  $ _____ 0.00**

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD. YOU SHOULD INCLUDE WHO OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

**TOTAL RECEIVABLES  $ _____ 0.00**

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED BY THIS REPORT.

*(Exhibit F)*

## EMPLOYEES

| | |
|---|---:|
| NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED? | 3 |
| NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT? | 3 |

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

| | | |
|---|---|---:|
| PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING PERIOD? | $ | 0.00 |
| TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING OF THE CASE? | $ | 5,000.00 |

*NON-BANKRUPTCY RELATED:*

| | | |
|---|---|---:|
| PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING PERIOD? | $ | . 0.00 |
| TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING OF THE CASE? | $ | 0.00 |

20-30522-hcm   Doc#66   Filed 11/06/20   Entered 11/06/20 13:46:50   Main Document   Pg 87 of 120
20-30522-hcm   Doc#56   Filed 10/23/20   Entered 10/23/20 12:47:09   Main Document   Pg 83 of 114
20-30522-hcm   Doc#38   Filed 08/24/20   Entered 08/24/20 15:38:00   Main Document   Pg 4 of 6

Page 4

B 25C (Official Form 25C) (12/08)

## PROJECTIONS

COMPARE YOUR ACTUAL INCOME AND EXPENSES TO THE PROJECTIONS FOR THE FIRST 180
DAYS OF YOUR CASE PROVIDED AT THE INITIAL DEBTOR INTERVIEW.

|  | | Projected | | Actual | | Difference |
|---|---|---|---|---|---|---|
| INCOME | $ | 124,940.00 | $ | 131,187.16 | $ | 6,247.16 |
| EXPENSES | $ | 124,270.00 | $ | 91,068.94 | $ | -33,201.06 |
| CASH PROFIT | $ | 670.00 | $ | 40,118.22 | $ | 39,448.22 |

| | | |
|---|---|---|
| TOTAL PROJECTED INCOME FOR THE NEXT MONTH: | $ | 119,000.00 |
| TOTAL PROJECTED EXPENSES FOR THE NEXT MONTH: | $ | 118,800.00 |
| TOTAL PROJECTED CASH PROFIT FOR THE NEXT MONTH: | $ | 200.00 |

## ADDITIONAL INFORMATION

PLEASE ATTACH ALL FINANCIAL REPORTS INCLUDING AN INCOME STATEMENT AND BALANCE SHEET
WHICH YOU PREPARE INTERNALLY.

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 88 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 84 of
20-30522-hcm Doc#47 Filed 09/28/20 Entered 09/28/20 17:53:17 Main Document Pg 1 of 6

B 25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT

### Western District of Texas

In re  PTSI Construction Inc                          ,          Case No.  20-30522
                *Debtor*

Small Business Case under Chapter 11

## SMALL BUSINESS MONTHLY OPERATING REPORT

Month:  August 2020                       Date filed:  09/25/2020

Line of Business:  Construction               NAISC Code:  235310

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING SMALL BUSINESS MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.

RESPONSIBLE PARTY:

JIM CICCHETTI
Original Signature of Responsible Party

Jim Cicchetti
Printed Name of Responsible Party

| Questionnaire: *(All questions to be answered on behalf of the debtor.)* | Yes | No |
|---|---|---|
| 1. IS THE BUSINESS STILL OPERATING? | ☑ | ☐ |
| 2. HAVE YOU PAID ALL YOUR BILLS ON TIME THIS MONTH? | ☑ | ☐ |
| 3. DID YOU PAY YOUR EMPLOYEES ON TIME? | ☑ | ☐ |
| 4. HAVE YOU DEPOSITED ALL THE RECEIPTS FOR YOUR BUSINESS INTO THE DIP ACCOUNT THIS MONTH? | ☑ | ☐ |
| 5. HAVE YOU FILED ALL OF YOUR TAX RETURNS AND PAID ALL OF YOUR TAXES THIS MONTH | ☑ | ☐ |
| 6. HAVE YOU TIMELY FILED ALL OTHER REQUIRED GOVERNMENT FILINGS? | ☑ | ☐ |
| 7. HAVE YOU PAID ALL OF YOUR INSURANCE PREMIUMS THIS MONTH? | ☑ | ☐ |
| 8. DO YOU PLAN TO CONTINUE TO OPERATE THE BUSINESS NEXT MONTH? | ☑ | ☐ |
| 9. ARE YOU CURRENT ON YOUR QUARTERLY FEE PAYMENT TO THE U.S. TRUSTEE? | ☑ | ☐ |
| 10. HAVE YOU PAID ANYTHING TO YOUR ATTORNEY OR OTHER PROFESSIONALS THIS MONTH? | ☐ | ☑ |
| 11. DID YOU HAVE ANY UNUSUAL OR SIGNIFICANT UNANTICIPATED EXPENSES THIS MONTH? | ☐ | ☑ |
| 12. HAS THE BUSINESS SOLD ANY GOODS OR PROVIDED SERVICES OR TRANSFERRED ANY ASSETS TO ANY BUSINESS RELATED TO THE DIP IN ANY WAY? | ☐ | ☑ |
| 13. DO YOU HAVE ANY BANK ACCOUNTS OPEN OTHER THAN THE DIP ACCOUNT? | ☐ | ☑ |

20-30522-hcm   Doc#66   Filed 11/06/20   Entered 11/06/20 13:46:50   Main Document   Pg 89 of
20-30522-hcm   Doc#56   Filed 10/23/20   Entered 10/23/20 12:47:09   Main Document   Pg 85 of
120
20-30522-hcm   Doc#47   Filed 09/28/20   Entered 09/28/20 17:53:17   Main Document   Pg 2 of 6

Page 2

B 25C (Official Form 25C) (12/08)

14.  HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH?  ☐ ☑

15.  DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH?  ☐ ☑

16.  HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH?  ☐ ☑

17.  HAS ANYONE MADE AN INVESTMENT IN YOUR BUSINESS THIS MONTH?  ☐ ☑

18.  HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY?  ☐ ☑

## TAXES

DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX  ☐ ☑
OBLIGATIONS?

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL
BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR
THE PAYMENT.

*(Exhibit A)*

## INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH.  THE LIST
SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. *(THE U.S. TRUSTEE
MAY WAIVE THIS REQUIREMENT.)*

| | | |
|---|---|---|
| TOTAL INCOME | $ | 95,049.25 |

### SUMMARY OF CASH ON HAND

| | | |
|---|---|---|
| Cash on Hand at Start of Month | $ | 122,700.87 |
| Cash on Hand at End of Month | $ | 79,968.46 |
| PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU   **TOTAL** | $ | 79,968.46 |

*(Exhibit B)*

## EXPENSES

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK
ACCOUNTS THIS MONTH.  INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE
PURPOSE AND THE AMOUNT.  *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

| | | |
|---|---|---|
| TOTAL EXPENSES | $ | 152,944.71 |

*(Exhibit C)*

## CASH PROFIT

| | | |
|---|---|---|
| INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)* | $ | 95,049.25 |
| EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)* | $ | 152,944.71 |
| *(Subtract Line C from Line B)*   **CASH PROFIT FOR THE MONTH** | $ | -57,895.46 |

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 90 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 86 of
120
20-30522-hcm Doc#47 Filed 09/28/20 Entered 09/28/20 17:53:17 Main Document Pg 3 of 6

Page 3

B 25C (Official Form 25C) (12/08)

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED
SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID. THE LIST MUST INCLUDE
THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE
DEBT AND WHEN THE DEBT IS DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

**TOTAL PAYABLES $**     **41,842.89**

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK
YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD. YOU SHOULD INCLUDE WHO
OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE. *(THE U.S. TRUSTEE MAY
WAIVE THIS REQUIREMENT.)*

**TOTAL RECEIVABLES $**     **0.00**

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU
HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED
BY THIS REPORT.

*(Exhibit F)*

## EMPLOYEES

| | |
|---|---|
| NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED? | **3** |
| NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT? | **3** |

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING
PERIOD?     **$ 8,692.00**

TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING
OF THE CASE?     **$ 13,692.00**

*NON-BANKRUPTCY RELATED:*

PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS
REPORTING PERIOD?     **$ 0.00**

TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID SINCE THE
FILING OF THE CASE?     **$ 0.00**

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 91 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 87 of
20-30522-hcm  Doc#47  Filed 09/28/20  Entered 09/28/20 17:53:17  Main Document  Pg 4 of 6

Page 4

B 25C (Official Form 25C) (12/08)

## PROJECTIONS

COMPARE YOUR ACTUAL INCOME AND EXPENSES TO THE PROJECTIONS FOR THE FIRST 180
DAYS OF YOUR CASE PROVIDED AT THE INITIAL DEBTOR INTERVIEW.

|  | | Projected | | Actual | | Difference |
|---|---|---|---|---|---|---|
| INCOME | $ | 95,049.25 | $ | 119,000.00 | $ | -23,950.75 |
| EXPENSES | $ | 152,944.71 | $ | 118,800.00 | $ | 34,144.71 |
| CASH PROFIT | $ | -57,895.46 | $ | 200.00 | $ | -58,095.46 |

| | | |
|---|---|---|
| TOTAL PROJECTED INCOME FOR THE NEXT MONTH: | $ | 53,000.00 |
| TOTAL PROJECTED EXPENSES FOR THE NEXT MONTH: | $ | 55,150.00 |
| TOTAL PROJECTED CASH PROFIT FOR THE NEXT MONTH: | $ | -2,150.00 |

## ADDITIONAL INFORMATION

PLEASE ATTACH ALL FINANCIAL REPORTS INCLUDING AN INCOME STATEMENT AND BALANCE SHEET
WHICH YOU PREPARE INTERNALLY.

20-30522-hcm   Doc#66   Filed 11/06/20   Entered 11/06/20 13:46:50   Main Document   Pg 92 of
20-30522-hcm   Doc#56   Filed 10/23/20   Entered 10/23/20 12:47:09   Main Document   Pg 88 of
114

# EXHIBIT "5"

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 93 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 89 of
114

IT IS HEREBY ADJUDGED and DECREED that the
below described is SO ORDERED.

Dated: May 29, 2020.

H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

In re                                §
                                     §
PTSI CONSTRUCTION, INC,              §        CASE NO. 20-30522-HCM-11
                                     §
        Debtor                       §

AGREED ORDER REGARDING DEBTOR'S PARTIAL OBJECTION TO
CLAIM #1 OF CITY OF EL PASO

On this day came on to be considered PTSI CONSTRUCTION, INC.'s Partial Objection
to Claim #1 of the CITY OF EL PASO in the amount of $63,151.56.  The Court, having
reviewed the Partial Objection (ECF #21) and the parties having announced they have agreed to
the resolution of this matter, the Court approves the parties' agreement and incorporates their
Agreement as this Court's Order.  It is therefore,

ORDERED that the City of El Paso Claim #1 shall be deemed an allowed claim in the
following amounts and classifications:

20-30522-hcm Doc#66 Filed 11/06/20 Entered 11/06/20 13:46:50 Main Document Pg 94 of
20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 90 of
120
114

1. $10,700.00 as an allowed secured claim that shall accrue statutory interest at the rate of 12% per annum from the petition date until paid in full;

2. $9,073.37 as an allowed priority claim that shall accrue statutory interest at the rate of 12% per annum from the confirmation date until paid in full; and

3. $43,378.19 as an allowed general unsecured claim.

IT IS FURTHER ORDERED that in the event this case is dismissed the reclassification of the City of El Paso debt shall be void and the tax lien reinstated in full as a secured claim.

###

AGREED BY:

E.P. BUD KIRK (State Bar No. 11508650)
Attorney at Law
600 Sunland Park Drive
Bldg. Four, Suite 400
El Paso, Texas 79912
(915) 584-3773 — Telephone
(915) 581-3452 — Facsimile
budkirk@aol.com

Attorney for Debtor

David G. Aelvoet (SBN 00786959)
DavidA@lgbs.com
Don Stecker (SBN 19095300)
Don.Stecker@lgbs.com
Bradley S. Balderrama (SBN 24040464)
Brad.Balderrama@lgbs.com
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
112 E. Pecan Street, Suite 2200
San Antonio, Texas 78205
(210) 225-6763 - Telephone
(210) 225-6410 — Facsimile
SanAntonio.Bankruptcy@lgbs.com

Attorneys for City of El Paso

# EXHIBIT "6"

6:02 PM
07/13/20

## P.T.S.I. Construction, Inc.
## Profit & Loss
### January through December 2016

| | Jan - Mar 16 | Apr - Jun 16 | Jul - Sep 16 | Oct - Dec 16 | TOTAL |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| **Income** | | | | | |
| Labor charged | 57,100.00 | 0.00 | 0.00 | 0.00 | 57,100.00 |
| Sales | 16,501.29 | 57,748.08 | 135,599.29 | 203,281.80 | 413,130.46 |
| **Total Income** | 73,601.29 | 57,748.08 | 135,599.29 | 203,281.80 | 470,230.46 |
| **Cost of Goods Sold** | | | | | |
| Cost of Goods Sold | 32,257.94 | 42,297.57 | 100,820.38 | 44,562.08 | 219,937.97 |
| **Total COGS** | 32,257.94 | 42,297.57 | 100,820.38 | 44,562.08 | 219,937.97 |
| **Gross Profit** | 41,343.35 | 15,450.51 | 34,778.91 | 158,719.72 | 250,292.49 |
| **Expense** | | | | | |
| Automobile Expense | 4,112.64 | 5,346.34 | 7,527.07 | 5,979.19 | 22,965.24 |
| Bank Service Charges | 0.00 | 9.00 | 0.00 | 25.00 | 34.00 |
| Donation | 0.00 | 0.00 | 0.00 | 300.00 | 300.00 |
| Education | 0.00 | 0.00 | 0.00 | 70.00 | 70.00 |
| Equipment Rental | 455.19 | 160.00 | 76.27 | 0.00 | 691.46 |
| Insurance | 2,493.77 | 3,182.85 | 3,710.16 | 3,930.54 | 13,317.32 |
| Interest Expense | 0.00 | 0.00 | 0.00 | 2,133.32 | 2,133.32 |
| Meals | 290.18 | 598.58 | 1,185.75 | 1,612.87 | 3,688.38 |
| Medical Expense (Employee) | 0.00 | 500.00 | 283.92 | 0.00 | 783.92 |
| membership fee | 454.58 | 407.35 | 232.35 | 282.29 | 1,376.57 |
| Office Supplies | 32.59 | 0.00 | 378.29 | 332.09 | 742.97 |
| Payroll Expenses | 15,411.02 | 17,828.93 | 22,445.91 | 31,578.27 | 87,264.13 |
| Professional Fees | 1,600.00 | 0.00 | 1,425.00 | 1,425.00 | 4,450.00 |
| Reconciliation Discrepancies | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Rent expense- 7348 N. Loop | 1,404.16 | 3,698.95 | 0.00 | 0.00 | 5,103.11 |
| Repairs | 1,380.00 | 0.00 | 0.00 | 0.00 | 1,380.00 |
| Software Fee | 148.17 | 148.17 | 148.17 | 148.17 | 592.68 |
| Storage | 337.50 | 0.00 | 907.11 | 1,279.64 | 2,524.25 |
| Subcontractors | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Taxes | 0.00 | 0.00 | 695.00 | 6,738.28 | 7,433.28 |
| Telephone | 2,454.85 | 2,362.36 | 2,511.71 | 2,789.18 | 10,118.10 |
| Travel & Ent | 4,398.60 | 2,025.16 | 5,261.09 | 7,875.03 | 19,559.87 |
| Utilities | 1,949.77 | 2,323.94 | 3,193.70 | 4,614.78 | 12,082.19 |
| workers uniforms | 0.00 | 0.00 | 685.20 | 0.00 | 685.20 |
| **Total Expense** | 36,923.02 | 38,592.60 | 50,646.70 | 71,113.65 | 197,275.97 |
| **Net Ordinary Income** | 4,420.33 | -23,142.09 | -15,867.79 | 87,606.07 | 53,016.52 |
| **Net Income** | 4,420.33 | -23,142.09 | -15,867.79 | 87,606.07 | 53,016.52 |

Page 1

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 97 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 93 of
114

5:02 PM
07/13/20

# P.T.S.I. Construction, Inc.
## Profit & Loss
### January through December 2017

| | Jan - Mar 17 | Apr - Jun 17 | Jul - Sep 17 | Oct - Dec 17 | TOTAL |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| **Income** | | | | | |
| Construction | 184,171.17 | 231,770.43 | 28,552.75 | 97,500.02 | 541,994.37 |
| **Total Income** | 184,171.17 | 231,770.43 | 28,552.75 | 97,500.02 | 541,994.37 |
| **Cost of Goods Sold** | | | | | |
| Cost of Goods Sold | 157,751.16 | 107,377.10 | 61,849.38 | 123,155.73 | 449,933.37 |
| **Total COGS** | 157,751.16 | 107,377.10 | 61,849.38 | 123,155.73 | 449,933.37 |
| **Gross Profit** | 26,420.01 | 124,393.33 | -33,096.63 | -25,655.71 | 92,061.00 |
| **Expense** | | | | | |
| Automobile Expense | 8,461.48 | 4,393.64 | 5,391.07 | 5,258.05 | 23,504.24 |
| Bank Service Charges | 0.00 | 297.63 | 1,008.26 | 1,896.40 | 3,202.29 |
| Bond Expense | 250.00 | 0.00 | 0.00 | 0.00 | 250.00 |
| Contributions | 500.00 | 0.00 | 0.00 | 0.00 | 500.00 |
| Donation | 800.00 | 0.00 | 0.00 | 0.00 | 800.00 |
| Dues and Subscriptions | 391.83 | 249.35 | 232.58 | 155.06 | 1,028.82 |
| Education | 0.00 | 0.00 | 0.00 | 70.00 | 70.00 |
| Equipment Rental | 0.00 | 264.29 | 0.00 | 0.00 | 264.29 |
| Insurance | 752.59 | 6,172.08 | 3,674.34 | 2,878.74 | 13,477.75 |
| Interest Expense | 0.00 | 0.00 | 0.00 | 9,253.91 | 9,253.91 |
| Licenses and Permits | 345.00 | 182.37 | 0.00 | 185.00 | 712.37 |
| Meals | 1,541.41 | 1,080.47 | 71.54 | 639.49 | 3,332.91 |
| membership fee | 107.26 | 29.85 | 29.85 | 41.85 | 208.81 |
| Office Supplies | 2,028.04 | 72.52 | 0.00 | 155.27 | 2,255.83 |
| Payroll Expenses | 26,717.74 | 19,480.57 | 18,936.25 | 14,369.71 | 79,504.27 |
| Professional Fees | 2,337.00 | 1,623.00 | 1,722.00 | 3,925.00 | 9,607.00 |
| Repairs | 0.00 | 334.44 | 0.00 | 0.00 | 334.44 |
| Software Fee | 39.44 | 0.00 | 0.00 | 0.00 | 39.44 |
| Storage | 626.64 | 0.00 | 0.00 | 0.00 | 626.64 |
| Telephone | 2,471.10 | 2,213.26 | 2,291.47 | 1,539.76 | 8,515.59 |
| Tools and Machinery | 50.76 | 0.00 | 38.94 | 0.00 | 89.70 |
| Travel & Ent | 1,877.59 | 470.18 | 0.00 | 3,108.50 | 5,456.27 |
| Utilities | 3,009.84 | 1,173.88 | 5,452.38 | 882.88 | 10,518.98 |
| **Total Expense** | 52,307.72 | 38,037.53 | 38,848.68 | 44,359.62 | 173,553.55 |
| **Net Ordinary Income** | -25,887.71 | 86,355.80 | -71,945.31 | -70,015.33 | -81,492.55 |
| **Net Income** | -25,887.71 | 86,355.80 | -71,945.31 | -70,015.33 | -81,492.55 |

20-30522-hcm  Doc#66  Filed 11/06/20  Entered 11/06/20 13:46:50  Main Document  Pg 98 of
20-30522-hcm  Doc#56  Filed 10/23/20  Entered 10/23/20 12:47:09  Main Document  Pg 94 of
114
100

6:03 PM
07/13/20

## P.T.S.I. Construction, Inc.
## Profit & Loss
### January through December 2018

| | Jan - Mar 18 | Apr - Jun 18 | Jul - Sep 18 | Oct - Dec 18 | TOTAL |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| **Income** | | | | | |
| Income | 98,016.81 | 183,245.43 | 372,440.61 | 204,852.91 | 858,555.76 |
| **Total Income** | 98,016.81 | 183,245.43 | 372,440.61 | 204,852.91 | 858,555.76 |
| **Cost of Goods Sold** | | | | | |
| Cost of Goods Sold | 28,947.20 | 104,764.52 | 167,005.00 | 93,638.44 | 394,355.16 |
| **Total COGS** | 28,947.20 | 104,764.52 | 167,005.00 | 93,638.44 | 394,355.16 |
| **Gross Profit** | 69,069.61 | 78,480.91 | 205,435.61 | 111,214.47 | 464,200.60 |
| **Expense** | | | | | |
| Advertising | 0.00 | 4,711.86 | 0.00 | 0.00 | 4,711.86 |
| Automobile Expense | 3,307.97 | 11,683.90 | 6,682.83 | 12,111.52 | 33,786.22 |
| Bank Service Charges | 29.85 | 356.35 | 25.00 | 57.50 | 468.70 |
| Bond Expense | 250.00 | 0.00 | 0.00 | 0.00 | 250.00 |
| Building Supplies | 0.00 | 702.54 | 0.00 | 0.00 | 702.54 |
| Contributions | 1,500.00 | 0.00 | 0.00 | 300.00 | 1,800.00 |
| Dues and Subscriptions | 547.44 | 232.77 | 230.13 | 359.29 | 1,369.63 |
| Education | 0.00 | 0.00 | 0.00 | 70.00 | 70.00 |
| Equipment Rental | 1,445.35 | 0.00 | 2,518.22 | 0.00 | 3,963.57 |
| Insurance | 1,109.10 | 2,997.29 | 3,088.56 | 2,822.17 | 10,017.12 |
| Interest Expense | 2,452.03 | 2,397.98 | 1,619.34 | 1,934.91 | 8,404.26 |
| Licenses and Permits | 67.95 | 0.00 | 0.00 | 185.00 | 252.95 |
| Meals | 214.01 | 315.34 | 755.11 | 1,397.17 | 2,681.63 |
| Office Supplies | 161.58 | 267.15 | 721.34 | 246.56 | 1,398.63 |
| Payroll Expenses | 6,724.05 | 20,701.33 | 27,423.82 | 19,083.37 | 73,912.57 |
| Professional Fees | 1,425.00 | 1,514.25 | 7,367.19 | 1,425.00 | 11,731.44 |
| Storage | 0.00 | 0.00 | 320.25 | 0.00 | 320.25 |
| Subcontractors | 7,745.50 | 6,678.93 | 2,621.12 | 17,975.63 | 35,221.18 |
| Taxes | 1,283.02 | 7,455.77 | 716.46 | 19,116.78 | 28,572.03 |
| Telephone | 2,861.03 | 1,874.25 | 2,106.26 | 2,313.36 | 9,154.90 |
| Tools and Machinery | 173.51 | 87.67 | 100.53 | 127.71 | 489.42 |
| Travel & Ent | 4,656.62 | 56,531.13 | 93.93 | 1,421.93 | 62,703.61 |
| Utilities | 1,729.04 | 1,102.27 | 1,445.91 | 2,078.01 | 6,355.23 |
| **Total Expense** | 37,683.05 | 119,810.78 | 58,036.00 | 83,005.91 | 298,335.74 |
| **Net Ordinary Income** | 31,386.56 | -41,129.87 | 147,399.61 | 28,208.56 | 165,864.86 |
| **Net Income** | 31,386.56 | -41,129.87 | 147,399.61 | 28,208.56 | 165,864.86 |

6:03 PM
07/13/20

**P.T.S.I. Construction, Inc.**
**Profit & Loss**
January through December 2019

| | Jan - Mar 19 | Apr - Jun 19 | Jul - Sep 19 | Oct - Dec 19 | TOTAL |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| **Income** | | | | | |
| Income | 176,161.21 | 146,835.46 | 31,172.82 | 124,707.72 | 478,877.21 |
| **Total Income** | 176,161.21 | 146,835.46 | 31,172.82 | 124,707.72 | 478,877.21 |
| **Cost of Goods Sold** | | | | | |
| Cost of Goods Sold | 94,789.25 | 57,556.91 | 27,349.03 | 32,431.14 | 212,126.33 |
| **Total COGS** | 94,789.25 | 57,556.91 | 27,349.03 | 32,431.14 | 212,126.33 |
| **Gross Profit** | 81,371.96 | 89,278.55 | 3,823.79 | 92,276.58 | 266,750.88 |
| **Expense** | | | | | |
| Automobile Expense | 4,905.09 | 4,339.44 | 3,551.50 | 6,473.72 | 19,269.75 |
| Bank Service Charges | 21.05 | 5.50 | 56.32 | 95.50 | 178.37 |
| Bond Expense | 0.00 | 0.00 | 0.00 | 250.00 | 250.00 |
| Dues and Subscriptions | 0.00 | 175.00 | 0.00 | 50.00 | 225.00 |
| Education | 0.00 | 0.00 | 0.00 | 1,045.39 | 1,045.39 |
| Equipment Rental | 822.41 | 0.00 | 0.00 | 0.00 | 822.41 |
| Insurance | 3,795.28 | 2,583.82 | 3,633.83 | 3,149.31 | 13,162.24 |
| Interest Expense | 0.00 | 518.28 | 357.53 | 3,105.15 | 3,980.96 |
| Licenses and Permits | 323.21 | 0.00 | 0.00 | 185.00 | 508.21 |
| Meals | 3,543.66 | 708.87 | 290.38 | 219.66 | 4,762.57 |
| Office Supplies | 50.79 | 48.24 | 377.30 | 124.83 | 801.16 |
| Payroll Expenses | 19,595.54 | 23,927.00 | 28,610.95 | 27,798.08 | 99,931.57 |
| Professional Fees | 2,925.00 | 1,425.00 | 1,425.00 | 1,925.00 | 7,700.00 |
| Taxes | 1,664.26 | 1,021.40 | 1,417.39 | 3,119.67 | 7,222.72 |
| Telephone | 3,972.42 | 2,603.44 | 2,317.15 | 2,454.09 | 11,347.10 |
| Tools and Machinery | 0.00 | 0.00 | 430.45 | 0.00 | 430.45 |
| Travel & Ent | 7,570.22 | 100.51 | 609.90 | 4,299.30 | 12,579.93 |
| Utilities | 16,352.88 | 634.21 | 1,370.84 | 1,093.17 | 19,451.10 |
| workers uniforms | 0.00 | 390.24 | 0.00 | 0.00 | 390.24 |
| **Total Expense** | 65,541.81 | 38,480.95 | 44,448.54 | 55,387.87 | 203,859.17 |
| **Net Ordinary Income** | 15,830.15 | 50,797.60 | -40,624.75 | 36,888.71 | 62,891.71 |
| **Net Income** | 15,830.15 | 50,797.60 | -40,624.75 | 36,888.71 | 62,891.71 |

# EXHIBIT "7"

# PTSI CONSTRUCTION, INC.
## CASE NO. 20-30522-HCM-11

| Month No. | MONTH | DAY | CREDITOR: | PAYMENT AMOUNT | |
|---|---|---|---|---|---|
| | **2020** | | | | |
| 1 | December | 1st | Texas Comptroller | $ | 2,597.81 |
| | | 10th | City of El Paso (priority) | $ | 325.47 |
| | | 10th | City of El Paso (secured) | $ | 383.82 |
| | | 15th | E.P. Bud Kirk | $ | 1,410.13 |
| | | 15th | Trustee's fees (est.) | $ | 250.00 |
| | | 31st | Texas Comptroller | $ | 213.80 |
| | | 31st | City of El Paso (unsecured) | $ | 250.00 |
| | | | Trustee's surcharge (5%) | $ | 259.05 |
| | | | **TOTAL TO SEND TRUSTEE BY NOV 20** | $ | 5,690.08 |
| | **2021** | | | | |
| 2 | January | 1st | Texas Comptroller | $ | 2,597.81 |
| | | 10th | City of El Paso (priority) | $ | 325.47 |
| | | 10th | City of El Paso (secured) | $ | 383.82 |
| | | 15th | E.P. Bud Kirk | $ | 1,410.13 |
| | | 15th | Trustee's fees (est.) | $ | 250.00 |
| | | | Trustee's surcharge (5%) | $ | 235.86 |
| | | | **TOTAL TO SEND TRUSTEE BY DEC 20** | $ | 5,203.09 |
| 3 | February | 1st | Texas Comptroller | $ | 2,597.81 |
| | | 10th | City of El Paso (priority) | $ | 325.47 |
| | | 10th | City of El Paso (secured) | $ | 383.82 |
| | | 15th | Administrative Convenience Class | $ | 2,150.00 |
| | | 15th | E.P. Bud Kirk | $ | 1,410.13 |
| | | 15th | Trustee's fees (est.) | $ | 250.00 |
| | | | Trustee's surcharge (5%) | $ | 343.36 |
| | | | **TOTAL TO SEND TRUSTEE BY JAN 20** | $ | 7,460.59 |
| 4 | March | 1st | Texas Comptroller | $ | 2,597.81 |
| | | 10th | City of El Paso (priority) | $ | 325.47 |
| | | 10th | City of El Paso (secured) | $ | 383.82 |
| | | 15th | E.P. Bud Kirk | $ | 1,410.13 |
| | | 15th | Trustee's fees (est.) | $ | 250.00 |
| | | 31st | Texas Comptroller | $ | 213.80 |
| | | 31st | City of El Paso (unsecured) | $ | 250.00 |
| | | | Trustee's surcharge (5%) | $ | 259.05 |
| | | | **TOTAL TO SEND TRUSTEE BY FEB 20** | $ | 5,690.08 |

| | MONTH | DAY | CREDITOR: | PAYMENT AMOUNT | |
|---|---|---|---|---|---|
| | **2021** | | | | |
| **5** | April | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | 15th | E.P. Bud Kirk | $ 1,410.13 | |
| | | 15th | Trustee's fees (est.) | $ 250.00 | |
| | | | Trustee's surcharge (5%) | $ 235.86 | |
| | | | **TOTAL TO SEND TRUSTEE BY MAR 20** | $ 5,203.09 | |
| | | | | | |
| **6** | May | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | 15th | E.P. Bud Kirk | $ 1,410.13 | |
| | | 15th | Trustee's fees (est.) | $ 250.00 | |
| | | | Trustee's surcharge (5%) | $ 235.86 | |
| | | | **TOTAL TO SEND TRUSTEE BY APR 20** | $ 5,203.09 | |
| | | | | | |
| **7** | June | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | 15th | E.P. Bud Kirk | $ 1,410.13 | |
| | | 15th | Trustee's fees (est.) | $ 250.00 | |
| | | 30th | Texas Comptroller | $ 213.80 | |
| | | 30th | City of El Paso (unsecured) | $ 250.00 | |
| | | | Trustee's surcharge (5%) | $ 259.05 | |
| | | | **TOTAL TO SEND TRUSTEE BY MAY 20** | $ 5,690.08 | |
| | | | SBA Direct Loan Payment | | $ 382.00 |
| | | | | | |
| **8** | July | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | 15th | E.P. Bud Kirk | $ 1,410.13 | |
| | | 15th | Trustee's fees (est.) | $ 250.00 | |
| | | | Trustee's surcharge (5%) | $ 235.86 | |
| | | | **TOTAL TO SEND TRUSTEE BY JUN 20** | $ 5,203.09 | |
| | | | SBA Direct Loan Payment | | $ 382.00 |
| | | | | | |
| **9** | August | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | 15th | E.P. Bud Kirk | $ 1,410.13 | |
| | | 15th | Trustee's fees (est.) | $ 250.00 | |
| | | | Trustee's surcharge (5%) | $ 235.86 | |
| | | | **TOTAL TO SEND TRUSTEE BY JUL 20** | $ 5,203.09 | |

| | | | | CREDITOR: | | PAYMENT AMOUNT |
|---|---|---|---|---|---|---|
| | | | | SBA Direct Loan Payment | $ | 382.00 |
| | | | | | | |
| 10 | September | 1st | | Texas Comptroller | $ | 2,597.81 |
| | | 10th | | City of El Paso (priority) | $ | 325.47 |
| | | 10th | | City of El Paso (secured) | $ | 383.82 |
| | | 15th | | E.P. Bud Kirk | $ | 1,410.13 |
| | | 15th | | Trustee's fees (est.) | $ | 250.00 |
| | | 30th | | Texas Comptroller | $ | 213.80 |
| | | 30th | | City of El Paso (unsecured) | $ | 250.00 |
| | | | | Trustee's surcharge (5%) | $ | 259.05 |
| | | | | **TOTAL TO SEND TRUSTEE BY AUG 20** | $ | 5,690.08 |
| | | | | SBA Direct Loan Payment | $ | 382.00 |

| | **MONTH** | **DAY** | | **CREDITOR:** | **PAYMENT AMOUNT** | |
|---|---|---|---|---|---|---|
| | **2021** | | | | | |
| 11 | October | 1st | | Texas Comptroller | $ | 2,597.81 |
| | | 10th | | City of El Paso (priority) | $ | 325.47 |
| | | 10th | | City of El Paso (secured) | $ | 383.82 |
| | | 15th | | Trustee's fees (est.) | $ | 250.00 |
| | | | | Trustee's surcharge (5%) | $ | 165.36 |
| | | | | **TOTAL TO SEND TRUSTEE BY SEP 20** | $ | 3,722.46 |
| | | | | SBA Direct Loan Payment | $ | 382.00 |
| | | | | | | |
| 12 | November | 1st | | Texas Comptroller | $ | 2,597.81 |
| | | 10th | | City of El Paso (priority) | $ | 325.47 |
| | | 10th | | City of El Paso (secured) | $ | 383.82 |
| | | 15th | | Trustee's fees (est.) | $ | 250.00 |
| | | | | Trustee's surcharge (5%) | $ | 165.36 |
| | | | | **TOTAL TO SEND TRUSTEE BY OCT 20** | $ | 3,722.46 |
| | | | | SBA Direct Loan Payment | $ | 382.00 |
| | | | | | | |
| 13 | December | 1st | | Texas Comptroller | $ | 2,597.81 |
| | | 10th | | City of El Paso (priority) | $ | 325.47 |
| | | 10th | | City of El Paso (secured) | $ | 383.82 |
| | | 31st | | Texas Comptroller | $ | 213.80 |
| | | 31st | | City of El Paso (unsecured) | $ | 250.00 |
| | | | | Trustee's surcharge (5%) | $ | 188.55 |
| | | | | **TOTAL TO SEND TRUSTEE BY NOV 20** | $ | 3,959.45 |
| | | | | SBA Direct Loan Payment | $ | 382.00 |
| | | | | | | |
| | **2022** | | | | | |
| 14 | January | 1st | | Texas Comptroller | $ | 2,597.81 |
| | | 10th | | City of El Paso (priority) | $ | 325.47 |
| | | 10th | | City of El Paso (secured) | $ | 383.82 |
| | | | | Trustee's surcharge (5%) | $ | 165.36 |
| | | | | **TOTAL TO SEND TRUSTEE BY DEC 20** | $ | 3,472.46 |

|  |  |  | SBA Direct Loan Payment |  |  | $ | 382.00 |
|---|---|---|---|---|---|---|---|
| 15 | February | 1st | Texas Comptroller | $ | 2,597.81 |  |  |
|  |  | 10th | City of El Paso (priority) | $ | 325.47 |  |  |
|  |  | 10th | City of El Paso (secured) | $ | 383.82 |  |  |
|  |  |  | Trustee's surcharge (5%) | $ | 165.36 |  |  |
|  |  |  | TOTAL TO SEND TRUSTEE BY JAN 20 | $ | 3,472.46 |  |  |
|  |  |  | SBA Direct Loan Payment |  |  | $ | 382.00 |
| 16 | March | 1st | Texas Comptroller | $ | 2,597.81 |  |  |
|  |  | 10th | City of El Paso (priority) | $ | 325.47 |  |  |
|  |  | 10th | City of El Paso (secured) | $ | 383.82 |  |  |
|  |  | 31st | Texas Comptroller | $ | 213.80 |  |  |
|  |  | 31st | City of El Paso (unsecured) | $ | 250.00 |  |  |
|  |  |  | Trustee's surcharge (5%) | $ | 188.55 |  |  |
|  |  |  | TOTAL TO SEND TRUSTEE BY FEB 20 | $ | 3,959.45 |  |  |
|  |  |  | SBA Direct Loan Payment |  |  | $ | 382.00 |

| | MONTH | DAY | CREDITOR: | PAYMENT AMOUNT | | | |
|---|---|---|---|---|---|---|---|
|  | 2022 |  |  |  |  |  |  |
| 17 | April | 1st | Texas Comptroller | $ | 2,597.81 |  |  |
|  |  | 10th | City of El Paso (priority) | $ | 325.47 |  |  |
|  |  | 10th | City of El Paso (secured) | $ | 383.82 |  |  |
|  |  |  | Trustee's surcharge (5%) | $ | 165.36 |  |  |
|  |  |  | TOTAL TO SEND TRUSTEE BY MAR 20 | $ | 3,472.46 |  |  |
|  |  |  | SBA Direct Loan Payment |  |  | $ | 382.00 |
| 18 | May | 1st | Texas Comptroller | $ | 2,597.81 |  |  |
|  |  | 10th | City of El Paso (priority) | $ | 325.47 |  |  |
|  |  | 10th | City of El Paso (secured) | $ | 383.82 |  |  |
|  |  |  | Trustee's surcharge (5%) | $ | 165.36 |  |  |
|  |  |  | TOTAL TO SEND TRUSTEE BY APR 20 | $ | 3,472.46 |  |  |
|  |  |  | SBA Direct Loan Payment |  |  | $ | 382.00 |
| 19 | June | 1st | Texas Comptroller | $ | 2,597.81 |  |  |
|  |  | 10th | City of El Paso (priority) | $ | 325.47 |  |  |
|  |  | 10th | City of El Paso (secured) | $ | 383.82 |  |  |
|  |  | 30th | Texas Comptroller | $ | 213.80 |  |  |
|  |  | 30th | City of El Paso (unsecured) | $ | 250.00 |  |  |
|  |  |  | Trustee's surcharge (5%) | $ | 188.55 |  |  |
|  |  |  | TOTAL TO SEND TRUSTEE BY MAY 20 | $ | 3,959.45 |  |  |
|  |  |  | SBA Direct Loan Payment |  |  | $ | 382.00 |
| 20 | July | 1st | Texas Comptroller | $ | 2,597.81 |  |  |
|  |  | 10th | City of El Paso (priority) | $ | 325.47 |  |  |
|  |  | 10th | City of El Paso (secured) | $ | 383.82 |  |  |
|  |  |  | Trustee's surcharge (5%) | $ | 165.36 |  |  |

| | MONTH | DAY | CREDITOR: | PAYMENT AMOUNT | |
|---|---|---|---|---|---|
| | | | TOTAL TO SEND TRUSTEE BY JUN 20 | $ 3,472.46 | |
| | | | SBA Direct Loan Payment | | $ 382.00 |
| 21 | August | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | | Trustee's surcharge (5%) | $ 165.36 | |
| | | | TOTAL TO SEND TRUSTEE BY JUL 20 | $ 3,472.46 | |
| | | | SBA Direct Loan Payment | | $ 382.00 |
| 22 | September | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | 30th | Texas Comptroller | $ 213.80 | |
| | | 30th | City of El Paso (unsecured) | $ 250.00 | |
| | | | Trustee's surcharge (5%) | $ 188.55 | |
| | | | TOTAL TO SEND TRUSTEE BY AUG 20 | $ 3,959.45 | |
| | | | SBA Direct Loan Payment | | $ 382.00 |
| 23 | October | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | | Trustee's surcharge (5%) | $ 165.36 | |
| | | | TOTAL TO SEND TRUSTEE BY SEP 20 | $ 3,472.46 | |
| | | | SBA Direct Loan Payment | | $ 382.00 |
| 24 | November | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | | Trustee's surcharge (5%) | $ 165.36 | |
| | | | TOTAL TO SEND TRUSTEE BY OCT 20 | $ 3,472.46 | |
| | | | SBA Direct Loan Payment | | $ 382.00 |

| | MONTH | DAY | CREDITOR: | PAYMENT AMOUNT | |
|---|---|---|---|---|---|
| | **2022** | | | | |
| 25 | December | 1st | Texas Comptroller | $ 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ 325.47 | |
| | | 10th | City of El Paso (secured) | $ 383.82 | |
| | | 31st | Texas Comptroller | $ 213.80 | |
| | | 31st | City of El Paso (unsecured) | $ 250.00 | |
| | | | Trustee's surcharge (5%) | $ 188.55 | |
| | | | TOTAL TO SEND TRUSTEE BY NOV 20 | $ 3,959.45 | |
| | | | SBA Direct Loan Payment | | $ 382.00 |
| | **2023** | | | | |
| 26 | January | 1st | Texas Comptroller | $ 2,597.81 | |

|    |          |      |                                        |    |          |    |        |
|----|----------|------|----------------------------------------|----|----------|----|--------|
|    |          | 10th | City of El Paso (priority)             | $  | 325.47   |    |        |
|    |          | 10th | City of El Paso (secured)              | $  | 383.82   |    |        |
|    |          |      | Trustee's surcharge (5%)               | $  | 165.36   |    |        |
|    |          |      | **TOTAL TO SEND TRUSTEE BY DEC 20**    | $  | 3,472.46 |    |        |
|    |          |      | SBA Direct Loan Payment                |    |          | $  | 382.00 |
| 27 | February | 1st  | Texas Comptroller                      | $  | 2,597.81 |    |        |
|    |          | 10th | City of El Paso (priority)             | $  | 325.47   |    |        |
|    |          | 10th | City of El Paso (secured)              | $  | 383.82   |    |        |
|    |          |      | Trustee's surcharge (5%)               | $  | 165.36   |    |        |
|    |          |      | **TOTAL TO SEND TRUSTEE BY JAN 20**    | $  | 3,472.46 |    |        |
|    |          |      | SBA Direct Loan Payment                |    |          | $  | 382.00 |
| 28 | March    | 1st  | Texas Comptroller                      | $  | 2,597.81 |    |        |
|    |          | 10th | City of El Paso (priority)             | $  | 325.47   |    |        |
|    |          | 10th | City of El Paso (secured)              | $  | 383.82   |    |        |
|    |          | 31st | Texas Comptroller                      | $  | 213.80   |    |        |
|    |          | 31st | City of El Paso (unsecured)            | $  | 250.00   |    |        |
|    |          |      | Trustee's surcharge (5%)               | $  | 188.55   |    |        |
|    |          |      | **TOTAL TO SEND TRUSTEE BY FEB 20**    | $  | 3,959.45 |    |        |
|    |          |      | SBA Direct Loan Payment                |    |          | $  | 382.00 |
| 29 | April    | 1st  | Texas Comptroller                      | $  | 2,597.81 |    |        |
|    |          | 10th | City of El Paso (priority)             | $  | 325.47   |    |        |
|    |          | 10th | City of El Paso (secured)              | $  | 383.82   |    |        |
|    |          |      | Trustee's surcharge (5%)               | $  | 165.36   |    |        |
|    |          |      | **TOTAL TO SEND TRUSTEE BY MAR 20**    | $  | 3,472.46 |    |        |
|    |          |      | SBA Direct Loan Payment                |    |          | $  | 382.00 |
| 30 | May      | 1st  | Texas Comptroller                      | $  | 2,597.81 |    |        |
|    |          | 10th | City of El Paso (priority)             | $  | 325.47   |    |        |
|    |          | 10th | City of El Paso (secured)              | $  | 383.82   |    |        |
|    |          |      | Trustee's surcharge (5%)               | $  | 165.36   |    |        |
|    |          |      | **TOTAL TO SEND TRUSTEE BY APR 20**    | $  | 3,472.46 |    |        |
|    |          |      | SBA Direct Loan Payment                |    |          | $  | 382.00 |
| 31 | June     | 1st  | Texas Comptroller                      | $  | 2,597.81 |    |        |
|    |          | 10th | City of El Paso (priority)             | $  | 325.47   |    |        |
|    |          | 10th | City of El Paso (secured)              | $  | 383.82   |    |        |
|    |          | 30th | Texas Comptroller                      | $  | 213.80   |    |        |
|    |          | 30th | City of El Paso (unsecured)            | $  | 250.00   |    |        |
|    |          |      | Trustee's surcharge (5%)               | $  | 188.55   |    |        |
|    |          |      | **TOTAL TO SEND TRUSTEE BY MAY 20**    | $  | 3,959.45 |    |        |
|    |          |      | SBA Direct Loan Payment                |    |          | $  | 382.00 |
| **MONTH** | | **DAY** | **CREDITOR:**                     |    | **PAYMENT AMOUNT** |  |     |

**2023**

| | | | | | | |
|---|---|---|---|---|---|---|
| 32 | July | 1st | Texas Comptroller | $ | 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ | 325.47 | |
| | | 10th | City of El Paso (secured) | $ | 383.82 | |
| | | | Trustee's surcharge (5%) | $ | 165.36 | |
| | | | **TOTAL TO SEND TRUSTEE BY JUN 20** | $ | 3,472.46 | |
| | | | SBA Direct Loan Payment | | | $ 382.00 |
| | | | | | | |
| 33 | August | 1st | Texas Comptroller | $ | 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ | 325.47 | |
| | | 10th | City of El Paso (secured) | $ | 383.82 | |
| | | | Trustee's surcharge (5%) | $ | 165.36 | |
| | | | **TOTAL TO SEND TRUSTEE BY JUL 20** | $ | 3,472.46 | |
| | | | SBA Direct Loan Payment | | | $ 382.00 |
| | | | | | | |
| 34 | September | 1st | Texas Comptroller | $ | 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ | 325.47 | |
| | | 10th | City of El Paso (secured) | $ | 383.82 | |
| | | 30th | Texas Comptroller | $ | 213.80 | |
| | | 30th | City of El Paso (unsecured) | $ | 250.00 | |
| | | | Trustee's surcharge (5%) | $ | 188.55 | |
| | | | **TOTAL TO SEND TRUSTEE BY AUG 20** | $ | 3,959.45 | |
| | | | SBA Direct Loan Payment | | | $ 382.00 |
| | | | | | | |
| 35 | October | 1st | Texas Comptroller | $ | 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ | 325.47 | |
| | | 10th | City of El Paso (secured) | $ | 383.82 | |
| | | | Trustee's surcharge (5%) | $ | 165.36 | |
| | | | **TOTAL TO SEND TRUSTEE BY SEP 20** | $ | 3,472.46 | |
| | | | SBA Direct Loan Payment | | | $ 382.00 |
| | | | | | | |
| 36 | November | 1st | Texas Comptroller | $ | 2,597.81 | |
| | | 10th | City of El Paso (priority) | $ | 325.47 | |
| | | 10th | City of El Paso (secured) | $ | 383.82 | |
| | | | Trustee's surcharge (5%) | $ | 165.36 | |
| | | | **TOTAL TO SEND TRUSTEE BY OCT 20** | $ | 3,472.46 | |
| | | | SBA Direct Loan Payment | | | $ 382.00 |

| | |
|---|---|
| **THREE YEARS' PROJECTED DISPOSABLE INCOME TOTAL** | **$ 162,376.24** |

| | | | | | | |
|---|---|---|---|---|---|---|
| 37 | December | 1st | Texas Comptroller | $ | 2,597.81 | |
| | | 31st | Texas Comptroller | $ | 213.80 | |
| | | 31st | City of El Paso (unsecured) | $ | 250.00 | |
| | | | Trustee's surcharge (5%) | $ | 153.08 | |
| | | | **TOTAL TO SEND TRUSTEE BY NOV 20** | $ | 3,214.69 | |
| | | | SBA Direct Loan Payment | | | $ 382.00 |

| | 2024 | | | | | | |
|---|---|---|---|---|---|---|---|
| 38 | January | 1st | Texas Comptroller | $ | 2,597.81 | | |
| | | | Trustee's surcharge (5%) | $ | 129.89 | | |
| | | | **TOTAL TO SEND TRUSTEE BY DEC 20** | $ | 2,727.70 | | |
| | | | SBA Direct Loan Payment | | | $ | 382.00 |
| | | | | | | | |
| 39 | February | 1st | Texas Comptroller | $ | 2,597.81 | | |
| | | | Trustee's surcharge (5%) | $ | 129.89 | | |
| | | | **TOTAL TO SEND TRUSTEE BY JAN 20** | $ | 2,727.70 | | |
| | | | SBA Direct Loan Payment | | | $ | 382.00 |

| | **MONTH** | **DAY** | **CREDITOR:** | | **PAYMENT AMOUNT** | | |
|---|---|---|---|---|---|---|---|
| | 2024 | | | | | | |
| 40 | March | 1st | Texas Comptroller | $ | 2,597.81 | | |
| | | 31st | Texas Comptroller | $ | 213.80 | | |
| | | 31st | City of El Paso (unsecured) | $ | 250.00 | | |
| | | | Trustee's surcharge (5%) | $ | 153.08 | | |
| | | | **TOTAL TO SEND TRUSTEE BY FEB 20** | $ | 3,214.69 | | |
| | | | SBA Direct Loan Payment | | | $ | 382.00 |
| | | | | | | | |
| 41 | April | 1st | Texas Comptroller | $ | 2,597.81 | | |
| | | | Trustee's surcharge (5%) | $ | 129.89 | | |
| | | | **TOTAL TO SEND TRUSTEE BY MAR 20** | $ | 2,727.70 | | |
| | | | SBA Direct Loan Payment | | | $ | 382.00 |
| | | | | | | | |
| 42 | May | 1st | Texas Comptroller | $ | 2,597.81 | | |
| | | | Trustee's surcharge (5%) | $ | 129.89 | | |
| | | | **TOTAL TO SEND TRUSTEE BY APR 20** | $ | 2,727.70 | | |
| | | | SBA Direct Loan Payment | | | $ | 382.00 |
| | | | | | | | |
| 43 | June | 1st | Texas Comptroller | $ | 2,597.81 | | |
| | | 30th | Texas Comptroller | $ | 213.80 | | |
| | | 30th | City of El Paso (unsecured) | $ | 250.00 | | |
| | | | Trustee's surcharge (5%) | $ | 153.08 | | |
| | | | **TOTAL TO SEND TRUSTEE BY MAY 20** | $ | 3,214.69 | | |
| | | | SBA Direct Loan Payment | | | $ | 382.00 |
| | | | | | | | |
| 44 | July | 1st | Texas Comptroller | $ | 2,597.81 | | |
| | | | Trustee's surcharge (5%) | $ | 129.89 | | |
| | | | **TOTAL TO SEND TRUSTEE BY JUN 20** | $ | 2,727.70 | | |
| | | | SBA Direct Loan Payment | | | $ | 382.00 |
| | | | | | | | |
| 45 | August | 1st | Texas Comptroller | $ | 2,597.81 | | |
| | | | Trustee's surcharge (5%) | $ | 129.89 | | |
| | | | **TOTAL TO SEND TRUSTEE BY JUL 20** | $ | 2,727.70 | | |

|   |   |   | SBA Direct Loan Payment |   |   | $ | 382.00 |
|---|---|---|---|---|---|---|---|
| 46 | September | 1st | Texas Comptroller | $ | 2,597.81 |   |   |
|   |   | 30th | Texas Comptroller | $ | 213.80 |   |   |
|   |   | 30th | City of El Paso (unsecured) | $ | 250.00 |   |   |
|   |   |   | Trustee's surcharge (5%) | $ | 153.08 |   |   |
|   |   |   | **TOTAL TO SEND TRUSTEE BY AUG 20** | $ | 3,214.69 |   |   |
|   |   |   | SBA Direct Loan Payment |   |   | $ | 382.00 |
| 47 | October | 1st | Texas Comptroller | $ | 2,597.81 |   |   |
|   |   |   | Trustee's surcharge (5%) | $ | 129.89 |   |   |
|   |   |   | **TOTAL TO SEND TRUSTEE BY SEP 20** | $ | 2,727.70 |   |   |
|   |   |   | SBA Direct Loan Payment |   |   | $ | 382.00 |
| 48 | November | 1st | Texas Comptroller | $ | 2,597.81 |   |   |
|   |   |   | Trustee's surcharge (5%) | $ | 129.89 |   |   |
|   |   |   | **TOTAL TO SEND TRUSTEE BY OCT 20** | $ | 2,727.70 |   |   |
|   |   |   | SBA Direct Loan Payment |   |   | $ | 382.00 |

**Note:** Payment deferrals due to construction lulls will extend this payments calendar and increase the total interest that has to be paid. The Trustee must be notified in writing, in advance of the payment due date, when a deferral is being used, and which creditors it is being used for.

# EXHIBIT "8"

## ADMINISTRATIVE CONVENIENCE CLASS

|  | Total Claim | 50% |
|---|---|---|
| BC Landscaping, LLC<br>301 Lafayette<br>El Paso, TX  79915 | $  1,200.00 | $     600.00 |
| CED Electrical Supply<br>11500 Rojas<br>El Paso, TX  79936 | $     300.00 | $     150.00 |
| Phil's Plumbing Shop<br>7361 N. Loop<br>El Paso, TX  79915 | $     800.00 | $     400.00 |
| Sun City Winnelson<br>7179 Copper Queen<br>El Paso, TX  79915 | $  2,000.00 | $  1,000.00 |
| Total | $  4,300.00 | $  2,150.00 |

# EXHIBIT "9"

## § 1141. Effect of confirmation

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not--

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(2) A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title.

(3) The confirmation of a plan does not discharge a debtor if--

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

(5) In a case in which the debtor is an individual--

(A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

(B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if--

(i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

(ii) modification of the plan under section 1127 is not practicable; and

(iii) subparagraph (C) permits the court to grant a discharge; and

(C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that--

(i) section 522(q)(1) may be applicable to the debtor; and

(ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B);

and if the requirements of subparagraph (A) or (B) are met.

(6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt--

(A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute; or

(B) for a tax or customs duty with respect to which the debtor--

(i) made a fraudulent return; or

(ii) willfully attempted in any manner to evade or to defeat such tax or such customs duty.

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2638; Pub.L. 98-353, Title III, § 513, July 10, 1984, 98 Stat. 387; Pub.L. 109-8, Title III, §§ 321(d), 330(b), Title VII, § 708, Apr. 20, 2005, 119 Stat. 95, 101, 126; Pub.L. 111-327, § 2(a)(36), Dec. 22, 2010, 124 Stat. 3561.)

20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 108 of 114

# EXHIBIT "10"

§ 1191. Confirmation of plan, 11 USCA § 1191

> United States Code Annotated
>  Title 11. Bankruptcy (Refs & Annos)
>   Chapter 11. Reorganization (Refs & Annos)
>    Subchapter V. Small Business Debtor Reorganization

### 11 U.S.C.A. § 1191

### § 1191. Confirmation of plan

#### Currentness

(a) Terms.—The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met.

(b) Exception.—Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(c) Rule of construction.—For purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:

  (1) With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.

  (2) As of the effective date of the plan—

    (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

    (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

  (3)(A)(i) The debtor will be able to make all payments under the plan; or

  (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and

  (B) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

**§ 1191. Confirmation of plan, 11 USCA § 1191**

(d) Disposable income.—For purposes of this section, the term "disposable income" means the income that is received by the debtor and that is not reasonably necessary to be expended—

(1) for—

(A) the maintenance or support of the debtor or a dependent of the debtor; or

(B) a domestic support obligation that first becomes payable after the date of the filing of the petition; or

(2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

(e) Special rule.—Notwithstanding section 1129(a)(9)(A) of this title, a plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) of this title may be confirmed under subsection (b) of this section.

## CREDIT(S)

(Added Pub.L. 116-54, § 2(a), Aug. 23, 2019, 133 Stat. 1082.)

11 U.S.C.A. § 1191, 11 USCA § 1191
Current through P.L. 116-145.

End of Document                                            • 2020 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "11"

## § 1129. Confirmation of plan

(a) The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and
(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interests—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such

Next

20-30522-hcm Doc#56 Filed 10/23/20 Entered 10/23/20 12:47:09 Main Document Pg 113 of 114

claim will receive on account of such claim regular installment payments in cash--

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(12) All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

(14) If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

(15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan--

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

(16) All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides--

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property

subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

**(II)** that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

(C) With respect to a class of interests—

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(ii) the holder of any interest that is junior to the

interests of such class will not receive or retain under the plan on account of such junior interest any property.

(c) Notwithstanding subsections (a) and (b) of this section and except as provided in section 1127(b) of this title, the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title. If the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

(d) Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. In any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance.

(e) In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).

Next – . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .